192-08/GMV
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL INSURANCE COMNPANY and MARAN, INC. | 08-cv-01806 (SHS) |
| Plaintiffs | |
| - versus - | **DECLARATION OF WILLIAM J. BENDER** |
| M/V MSC CHINA, her engines, boilers, tackle, etc., POWER LINK LOGISTICS INC., SAFMARINE CONTAINER LINES N.V. | |
| Defendants. | |

I, WILLIAM J. BENDER, under penalty of perjury, hereby state the following

1.      I am a Senior Claims Specialist in the Risk & Claim Management Department for Maersk Inc., an agent for Defendant Safmarine Container Lines N.V. ("Safmarine").  I am responsible for handling cargo claims asserted against Safmarine in the United States. I have been employed in the shipping industry for seven (7) years.  I have held the position as Senior Claims Specialist since 2006, and prior to that, I was Claims Adjuster.

2.      I have personal knowledge of the matters stated herein and provide this Declaration based upon my personal knowledge and experience.

3.      I submit this Declaration in support of Safmarine's motion to dismiss the complaint.

4.      Safmarine is an ocean carrier specializing in the carriage of containerized cargoes with a regular liner service between South Africa and United States ports.

5.      As part of my regular duties and throughout my experience, I review/have reviewed standard voyage documentation, including bills of lading, sea waybills, and freight charges relating to shipments carried by Safmarine.  In my work with Safmarine, I have

1

reviewed hundreds of bills of lading issued by or on behalf of Safmarine and I am fully familiar with the standard form of Safmarine bills of lading and waybills, notations relating to the carriage of containerized cargoes, and how such a bill of lading or waybill is generally prepared.

6.    On or about July 9, 2007, Safmarine was notified of a claim asserted against it in regards to container no. TEXU 4748216 which was carried pursuant to Safmarine Non-Negotiable Waybill no. 750336194.    It was alleged that when the consignee's warehouse shipping manager cut the seal on the container and opened it at the warehouse in New Jersey, he discovered that the container was empty.  A claim was asserted against Safmarine for the alleged loss of 755 cartons of garments that the consignee alleged had been stuffed into the container by the shipper (or its agents) but which cartons were missing when the container was opened.

7.    Attached as **Exhibit A** to this Declaration is a true and accurate copy of the front side of Safmarine Non-Negotiable Waybill no. 750336194 (hereinafter referred to as the "Waybill").

8.    The attached copy of the Waybill is maintained by Safmarine in electronic form in the normal course of business.  For purposes of this litigation, I am considered the custodian of the Waybill information which is available on the Safmarine system.

9.    The front side of the Waybill provides:

> This non-negotiable Waybill, which is issued instead of a Bill of Lading at the Merchant's request, is not a document of title to the Goods. Otherwise the contract evidenced by this Waybill is deemed to be a contract as defined in Article 1(b) of the Hague Rules. Carrier to exercise due care ensuring that delivery is made to the Consignee or his authorised representative. However, the Carrier shall not be liable for misdelivery, unless caused by the Carrier's negligence. In accepting this Waybill, and/or taking delivery of the Goods and notwithstanding the non-signing of this Waybill by the Merchant, the Merchant expressly accepts and agrees to all terms, conditions and exceptions of the Carrier's non-negotiable Waybill, (printed or not on the reverse of this document at Merchant's option and available from the Carrier or its agents and at

Carrier's website indicated in the signature box below), as well as those printed, stamped or otherwise incorporated in this Waybill.

10.    The website indicated in the signature box on the Waybill is www.safmarine.com.

11.    This language is standard language that is automatically printed on all waybills issued by Safmarine.

12.    Attached as **Exhibit B** is a true and accurate copy of the standard terms, conditions and exceptions of Safmarine's non-negotiable waybill which would have been printed on the reverse side of the Waybill. These printed clauses are standard terms applicable to waybills and bills of lading issued by Safmarine in this liner service at the relevant time. The standard terms, conditions and exceptions were accessible to the public at the relevant time and are currently accessible on the Safmarine website at www.safmarine.com. The copy attached hereto was printed from the website.

13.    Clause 26 of the Waybill provides:

**26. Law and Jurisdiction**

Any claim or dispute arising under this TD [Transport Document],[1] including third party proceedings or those involving several defendants, shall exclusively be governed by the law and exclusively be determined by the courts of the place where the Carrier has his registered office (to the exclusion of the jurisdiction of the courts of any other place) or, at the Carrier's option if the defendant is not the Carrier, by the courts and according to the law of that place where the defendant has his registered office, but only to the extent that anything else has not been dealt with by the provisions of this TD.

---

[1] Clause 1 of the terms defines "Transport Document" or "TD" as the "document, which evidences the contract of carriage governing the Carriage and which can either be a bill of lading or a non-negotiable waybill as determined on the reverse hereof." The TD here was the subject Waybill.

3

14.    The "Carrier" is defined in Clause 1 of the Waybill to mean "Safmarine Container Lines n.v., De Gerlachekaai 20, 2000 Antwerp, Belgium, BTW BE 0421.619.408 RPR Antwerp and VGVC n° 0326.001."

I declare under penalty of perjury that the foregoing statements are true and correct. Executed on 12th May 2008 at Madison, New Jersey.

WILLIAM J. BENDER

# EXHIBIT A

# TO BENDER DECLARATION

VERIFY COPY ARCHIVE COPY

# Safmarine

## NON-NEGOTIABLE WAYBILL

| | Waybill No. |
|---|---|
| | SAFMA 750336194 |

| | |
|---|---|
| **Shipper** ZA TRANS LOGISTICS 2ND FLOOR 67 OLD FORT RD DURBAN | **Booking No.** 750336194 |
| | **Export references** DSX3538 |

This non-negotiable Waybill, which is issued instead of a Bill of Lading at the Merchant's request, is not a document of title to the Goods. Otherwise the contract evidenced by this Waybill is deemed to be a contract as defined in Article 1(b) of the Hague Rules. Carrier to exercise due care ensuring that delivery is made to the Consignee or his authorised representative. However, the Carrier shall not be liable for misdelivery, unless caused by the Carrier's negligence. In accepting this waybill, and/or taking delivery of the Goods and notwithstanding the non-signing of this waybill by the Merchant, the Merchant expressly accepts and agrees to all terms, conditions and exceptions of the Carrier's non-negotiable Waybill whether or not on the reverse of this document at Merchant's option and available from the Carrier, its agents and at Carrier's website indicated in the signature box below, as well as those printed, stamped or otherwise incorporated in this Waybill.

| **Consignee** POWER LINK LOGISTICS INC 21112 FIGEROA STREET SUITE A MAIN TEL: 310-782-1111 FAX: 310-787 2500 | |
|---|---|

| **Notify Party** SAME AS ABOVE MAIN TEL: 310-782-1111 FAX: 310-787 2500 ATT: POLLY YANG | Onward Inland routing ( For account and risk of Merchant) |
|---|---|
| | Place of Receipt. Applicable only when document used as Multimodal Waybill |

| **Vessel** MSC CHINA | **Voyage No.** N350 | Place of Delivery. Applicable only when document used as Multimodal Waybill |
|---|---|---|
| **Port of Loading** Durban | **Port of Discharge** Newark | |

## PARTICULARS FURNISHED BY SHIPPER - CARRIER NOT RESPONSIBLE

| Kind of packages; description of goods; Marks and Numbers; Container No./Seal No. | Gross Weight | Measurement |
|---|---|---|
| 2 containers said to contain 1660 CARTONS | 19557.680 KGS | 107.6850 CBM |

WOVEN GARMENTS

TEXU4748216  ML-ZA0947843  40 DRY 8'6" 755 CARTONS 9711.290 KGS  53.8850 CBM

KNLU4309468  ML-ZA0947842  40 DRY 8'6" 905 CARTONS 9846.390 KGS  53.8000 CBM

SHIPPER'S LOAD, STOW, WEIGHT AND COUNT

CY/CY

FREIGHT COLLECT

Forwarder Ref: DSX3538

Above particulars as declared by Shipper, but without responsibility of or representation by Carrier

| Freight & Charges | Rate | Unit | Currency | Prepaid | Collect |
|---|---|---|---|---|---|
| Basic Ocean Freight | 2650.00 | Per Container | USD | | 5300.00 |
| Bunker Adjustment Factor | 880.00 | Per Container | USD | | 1760.00 |
| Chassis Usage | 60.00 | Per Container | USD | | 120.00 |
| Handling Charge - Destination | 600.00 | Per Container | USD | | 1200.00 |
| Equipment Repositioning Surcharge | 0.00 | Per Container | USD | | 0.00 |
| Export Service Charge | 341.00 | Per Container | ZAR | 682.00 | |
| Documentation Fee - Origin | 15.00 | Per Bill of Lading | USD | 15.00 | |
| Handling Charge - Origin | 1176.00 | Per Container | ZAR | 2352.00 | |
| Port Security Charge | 5.00 | Per Container | USD | | 10.00 |

| **Carrier's Receipt Total number of Containers or packages received by Carrier** 2 containers | **Place of Issue of Waybill** Durban | Shipped, as far as ascertained by reasonable means of checking, in apparent good order and condition unless otherwise stated herein the total number or quantity of Containers or other packages or units indicated in the box opposite entitled "Carrier's Receipt" |
|---|---|---|
| **Shipped on Board** 2007-0640 | **Date of Issue of Waybill** 2007-06-12 | |
| **Declared Value Charge (see clause 7.3 of Carrier's Waybill or Bill of Lading) for Declared Value of US$** | | Signed by the Carrier Safmarine Container Lines N.V. www.safmarine.com |

ARCHIVE COPY

| Freight & Charges | | Unit | Currency | Prepaid | Collect | |
|---|---|---|---|---|---|---|
| Carrier Security Charge | 6.00 | Per Container | USD | | | 12.00 |

# EXHIBIT B

# TO BENDER DECLARATION

# 1. DEFINITIONS

**"Transport Document" or "TD"** means this document, which evidences the contract of carriage governing the Carriage and which can either be a bill of lading or a non-negotiable waybill as determined on the reverse hereof.

**"Bill of Lading"** means this Transport Document if named bill of lading on the reverse hereof.

**"Carriage"** means the whole or any part of the carriage, loading, unloading, handling and any and all other services whatsoever undertaken by the Carrier in relation to the Goods.

**"Carrier"** means Safmarine Container Lines n.v., De Gerlachekaai 20, 2000 Antwerp, Belgium, BTW BE 0421.619.408 RPR Antwerp and VGVC n° 0326.001.

**"Container"** includes any container (including an open top container), flat rack, platform, trailer, transportable tank, pallet or any other similar article used to consolidate the Goods and any connected equipment.

**"Freight"** includes all charges payable to the Carrier in accordance with the applicable Tariff and this TD.

**"Goods"** means the whole or any part of the cargo and any packaging accepted from the Shipper and includes any Container not supplied by or on behalf of the Carrier.

**"Hague Rules"** means the provisions of the International Convention for the Unification of Certain Rules relating to bills of lading signed at Brussels on 25th August 1924.

**"Holder"** means any Person rightfully in possession of this Bill of Lading or the named Consignee in the event the Bill of Lading is non-negotiable.

**"Merchant"** includes the Shipper, Holder, Consignee, Receiver of the Goods, any Person owning or entitled to the possession of the Goods or of this Bill of Lading (when the TD is a Bill of Lading) and anyone acting on behalf of such Person.

**"Multimodal Transport"** arises if the Place of Receipt and/or the Place of Delivery are indicated on the reverse hereof in the relevant boxes.

**"Package"** where a Container is loaded with more than one package or unit, the packages or other shipping units enumerated on the reverse hereof as packed in such Container and entered in the box on the reverse hereof entitled **"Carrier's Receipt"** are each deemed a Package.

**"Person"** includes an individual, corporation, or other legal entity.

**"Port-to-Port"** arises if the Carriage is not Multimodal Transport.

**"Sub-Contractor"** includes owners, charterers and operators of vessels (other than the Carrier), stevedores, longshoremen, lighterers, terminal and groupage operators, road and rail transport operators, warehousemen, customs inspection stations, port authorities, pilots and any independent contractors employed by the Carrier performing the Carriage and any direct or indirect sub-contractors, servants and agents thereof whether in direct contractual privity or not.

**"Terms and Conditions"** means all terms, rights, defences, provisions, conditions, exceptions, limitations and liberties of this TD.

**"US COGSA"** means the US Carriage of Goods by Sea Act 1936.

**"Vessel"** means any water borne craft used in the Carriage under this TD which may be a feeder vessel or an ocean vessel.

## 2. CARRIER'S TARIFF

The terms and conditions of the Carrier's applicable Tariff are incorporated herein. Attention is drawn to the terms therein relating to free storage time and to container and vehicle demurrage or detention. Copies of the relevant provisions of the applicable Tariff are obtainable from the Carrier upon request. In the case of inconsistency between this TD and the applicable Tariff, the TD shall prevail.

## 3. WARRANTY

The Merchant warrants that in agreeing to the Terms and Conditions hereof he is, or has the authority to contract on behalf of, the Person owning or entitled to possession of the Goods and this TD.

# 4. SUB-CONTRACTING

**4.1** The Carrier shall be entitled to sub-contract on any terms whatsoever the whole or any part of the Carriage.

**4.2** The Merchant undertakes that no claim or allegation whether arising in contract, bailment, tort or otherwise shall be made against any servant, agent, or Sub-Contractor of the Carrier which imposes or attempts to impose upon any of them or any vessel owned or chartered by any of them any liability whatsoever in connection with the Goods or the Carriage of the Goods whether or not arising out of negligence on the part of such Person, and, if any such claim or allegation should nevertheless be made, to indemnify the Carrier against all consequences thereof. Without prejudice to the foregoing every such servant, agent, and Sub-Contractor shall have the benefit of all Terms and Conditions of whatsoever nature herein contained or otherwise benefiting the Carrier including clause 26 hereof, the law and jurisdiction clause, as if such Terms and Conditions were expressly for their benefit and, in entering into this contract, the Carrier, to the extent of such Terms and Conditions, does so on its own behalf, and also as agent and trustee for such servants, agents and Sub-Contractors.

**4.3** The provisions of clause 4.2 including but not limited to the undertaking of the Merchant contained therein, shall extend to all claims or allegations of whatsoever nature against other Persons chartering space on the carrying vessel.

**4.4** The Merchant further undertakes that no claim or allegation in respect of the Goods shall be made against the Carrier by any Person other than in accordance with the Terms and Conditions which imposes or attempts to impose upon the Carrier any liability whatsoever in connection with the Goods or the Carriage of the Goods, whether or not arising out of negligence on the part of the Carrier, and if any such claim or allegation should nevertheless be made, to indemnify the Carrier against all consequences thereof.

# 5. CARRIER'S RESPONSIBILITY : PORT-TO-PORT SHIPMENT

**5.1** Where the Carriage is Port-to-Port, then the liability (if any) of the Carrier for loss of or damage to the Goods occurring between the time of loading at the Port of Loading and the time of discharge at the Port of Discharge shall be determined in accordance with articles 1-8 (inclusive) of the Hague Rules save as is otherwise provided in this TD. These articles of the Hague Rules shall apply as a matter of contract.

**5.2** The Carrier shall have no liability whatsoever for any loss of or damage to the Goods, howsoever caused, if such loss or damage arises before loading onto or after discharge from the Vessel. Loading shall be deemed to have commenced when the Goods are connected with the tackle alongside the Vessel, and discharge shall be deemed to have been completed when the Goods are disconnected from the tackle alongside the Vessel.

**5.3** Where US COGSA governs the Carriage, as a matter of compulsory law, then the provisions stated in the said Act shall apply before loading on the Vessel or after discharge therefrom, as the case may be, during Carriage to or from a container yard or container freight station in or immediately adjacent to the sea terminal at the Port of Loading and/or Discharge. If the Carrier is requested by the Merchant to procure Carriage by an inland carrier in the USA and the inland carrier in his discretion agrees to do so, such Carriage shall be procured by the Carrier as agent only to the Merchant and such Carriage shall be subject to the inland carrier's contract and tariff. If for any reason the Carrier is denied the right to act as agent at these times, his liability for loss damage or delay to the Goods shall be determined in accordance with clause 6 hereof.

# 6. CARRIER'S RESPONSIBILITY - MULTIMODAL TRANSPORT

Where the Carriage is Multimodal Transport, the Carrier undertakes to perform and/or in his own name to procure performance of the Carriage from the Place of Receipt or the Port of Loading, whichever is applicable, to the Port of Discharge or the Place of Delivery, whichever is applicable, and, save as is otherwise provided for in this TD, the Carrier shall be liable for loss or damage occurring during the Carriage only to the extent set out below:

**6.1** Where the stage of Carriage where loss or damage occurred is not known, the Carrier shall only be liable if it is proven by the Holder, if this TD is a Bill of Lading, or by the Shipper or Consignee, if this TD is a non-negotiable waybill, that the loss of and/or damage to the Goods results solely from the Carrier's failure to exercise reasonable diligence in respect of the Goods.  In all other circumstances, the Carrier shall not be liable.

**6.2** Where the stage of Carriage where the loss or damage occurred is known notwithstanding anything provided for in clause 6.1 and subject to clause 18, the liability of the Carrier in respect of such loss or damage shall be determined:

**(a)** in case of shipments to or from the USA by the provisions of US COGSA if the loss or damage is known to have occurred during Carriage by sea to or from the USA or during Carriage to or from a container yard or container freight station in or immediately adjacent to the sea terminal at the Port of Loading or of Discharge in ports of the USA; or

**(b)** by the Hague Rules articles 1-8 inclusive where the provision of clause 6.2(a) does not apply and if the loss or damage is known to have occurred from and during loading onto the Vessel up to and during discharge from the Vessel.  These articles of the Hague Rules shall apply as a matter of contract; or

**(c)** if the loss or damage is known to have occurred during Carriage inland in the USA, in accordance with the contract of carriage or tariffs of any inland carrier in whose custody the loss or damage occurred or, in the absence of such contract by the provisions of clause 6.1, in either case the law of the State of New York will apply; or

**(d)** where the provisions of clause 6.2(a), (b), and/or (c) above do not apply, in accordance with the contract of carriage or tariffs of any inland carrier or Sub-Contractor in whose custody the loss or damage occurred or when the Sub-Contractor is a public, semi-public and/or imposed exclusive or monopolistic body by the conditions applicable for such body or in the absence of such contract by the provisions of clause 6.1.

For the purposes of clause 6.2 references in the Hague Rules to Carriage by sea shall be deemed to include references to all waterborne Carriage and the Hague Rules shall be construed accordingly.

**6.3** The Carrier shall be under no liability whatsoever for loss of or damage to the Goods howsoever occurring:

**(a)** if the Place of Receipt is not named on the reverse hereof and such loss or damage arises prior to loading on to the Vessel; or

**(b)** if the Place of Delivery is not named on the reverse hereof, and such loss or damage arises subsequent to discharge from the Vessel, save that where US COGSA governs the Carriage as a matter of compulsory law then the provisions stated in said Act shall apply before loading on to and after discharge from any Vessel and during Carriage to or from a container yard or container freight station in or immediately adjacent to the sea terminal at the Port of Loading and/or Discharge.

# 7. COMPENSATION AND LIABILITY PROVISIONS

**7.1** Subject always to the Carrier's right to limit liability as provided for herein, if the Carrier is liable for compensation in respect of loss of or damage to the Goods, such compensation shall be calculated by reference to the invoice value of the Goods plus Freight and insurance if paid. If there is no invoice value of the Goods or if any such invoice is not bona fide, such compensation shall be calculated by reference to the value of such Goods at the place and time they are delivered or should have been delivered to the Merchant. The value of the Goods shall be fixed according to the current market price, by reference to the normal value of goods of the same kind and/or quality.

**7.2** Save as is provided in clause 7.3:

**(a)** the Carrier's liability shall in no event exceed 2 SDR per kilo of the gross weight of the Goods lost, damaged or in respect of which a claim of whatsoever nature arises unless clause 7.2(b) applies.

**(b)** Where USA COGSA applies by virtue of clauses 5.3 or 6.2(a) neither the Carrier nor the Vessel shall in any event be or become liable for any loss of or damage to the Goods or in connection with the Carriage in an amount exceeding USD 500 per Package or customary freight unit.

**7.3** The Merchant agrees and acknowledges that the Carrier has no knowledge of the value of the Goods and higher compensation than that provided for in this TD may be claimed only when, with the consent of the Carrier, the value of the Goods declared by the Shipper upon delivery to the Carrier has been stated in the box marked "Declared Value" on the reverse of this TD and extra freight paid. In that case, the amount of the declared value shall be substituted for the limits laid down in this TD. Any partial loss or damage shall be adjusted pro rata on the basis of such declared value.

**7.4** Nothing in this TD shall operate to limit or deprive the Carrier of any statutory protection, defence, exception or limitation of liability authorised by any applicable laws, statutes or regulations of any country. The Carrier shall have the benefit of the said laws, statutes or regulations as if it were the owner of any carrying Vessel.

# 8. GENERAL

**8.1** The Carrier does not undertake that the Goods or any documents relating thereto shall arrive or be available at any point or place at any stage during the Carriage or at the Port of Discharge or the Place of Delivery at any particular time or to meet any particular requirement of any licence, permission, sale contract, or credit of the Merchant or any market or use of the Goods and the Carrier shall in no circumstances whatsoever and howsoever arising be liable for any direct, indirect or consequential loss or damage caused by delay. If the Carrier should nevertheless be held legally liable for any such direct or indirect or consequential loss or damage caused by delay, such liability shall in no event exceed the Freight paid.
**8.2** Save as is otherwise provided herein, the Carrier shall in no circumstances be liable for direct or indirect or consequential loss or damage arising from any other cause whatsoever or for loss of profits.
**8.3** Once the Goods have been received by the Carrier for Carriage the Merchant shall be entitled neither to impede, delay, suspend or stop or otherwise interfere with the Carrier's intended manner of performance of the Carriage or the exercise of the liberties conferred by this TD nor to instruct or require delivery of the Goods at any other Port or Place than the Port of Discharge or Place of Delivery named on the reverse hereof or such other Port or Place selected by the Carrier in the exercise of the liberties herein, for any reason whatsoever. The Merchant shall indemnify the Carrier against all claims, liabilities, losses, damages, costs, delays, attorney fees and/or expenses caused to the Carrier, his Sub-Contractors, servants or agents arising or resulting from any stoppage whatsoever in the Carriage of the Goods.
**8.4** The Terms and Conditions shall govern the responsibility of the Carrier in connection with or arising out of the supplying of a Container to the Merchant whether before, during or after the Carriage.
**8.5** In the event that the Merchant requests the Carrier to deliver the Goods: **(a)** at a port other than the Port of Discharge; or **(b)** (save in the USA) at a Place of Delivery instead of the Port of Discharge or **(c)** at a place beyond the Place of Delivery, and the Carrier in its absolute discretion agrees to such request, such further Carriage will be undertaken on the basis that the Terms and Conditions are to apply to such Carriage as if the ultimate destination agreed with the Merchant had been entered on the reverse side of this TD as the Port of Discharge or Place of Delivery.

## 9. NOTICE OF LOSS, TIME BAR

Unless notice of loss or damage and the general nature of such loss or damage be given in writing to the Carrier or his agents at the Place of Delivery (or Port of Discharge if no Place of Delivery is named on the reverse hereof) before or at the time of delivery of the Goods as described in clause 22 or if the loss or damage is not apparent within three days thereafter, the Carrier shall be deemed prima facie to have delivered the Goods as described in this TD. In any event, the Carrier shall be discharged from all liability whatsoever in respect of the Goods unless suit is brought within nine months after their delivery or after the date when they are considered to be duly delivered as per clause 22(2) or 22(3) as the case may be.

In case of any claims against the Carrier of whatsoever nature other than for damage to or loss of the Goods or of claims not relating to the Goods, notice to be given within one week and suit to be brought against the Carrier within 6 months after delivery as determined in clause 22, such claims otherwise being definitely waived and time-barred.

## 10. DEFENCES AND LIMITS FOR THE CARRIER

**10.1** It has been agreed between the Carrier and the Merchant that if the TD is a Bill of Lading only the Holder and if the TD is a non-negotiable waybill, only the Shipper or, alternatively, the Consignee (depending on which one of those two Persons actually incurred the loss or damage), shall be entitled to claim from the Carrier, whether or not such claim results from negligence on the part of the Carrier, and if any other Person than the aforementioned would nevertheless make such claim or allegation, then the Merchant shall indemnify the Carrier against all consequences thereof.

**10.2** The Terms and Conditions shall apply in any action against the Carrier for any loss or damage whatsoever and or howsoever occurring (and, without restricting the generality of the foregoing, including delay, late delivery and/or misdelivery) and whether the action be founded in contract, bailment or in tort and even if the loss, damage or delay arose as a result of unseaworthiness, negligence or fundamental breach of contract.

# 11. SHIPPER-PACKED CONTAINERS

If a Container has not been packed by or on behalf of the Carrier (FCL Container):

**11.1** This TD shall be a receipt only for such a Container;

**11.2** The Carrier shall not be liable for loss of or damage to the contents and the Merchant shall indemnify the Carrier against any injury, loss, damage, liability or expense whatsoever incurred by the Carrier if such loss of or damage to the contents and/or such injury, loss, damage, liability or expense has been caused by any matter beyond his control including, inter alia, without prejudice to the generality of this exclusion:

**(a)** the manner in which the Container has been packed; or

**(b)** the unsuitability of the Goods for carriage in Containers; or

**(c)** the unsuitability or defective condition of the Container or the incorrect setting of any thermostatic, ventilation, or other special controls thereof, provided that, if the Container has been supplied by the Carrier, this unsuitability or defective condition could have been apparent upon reasonable inspection by the Merchant at or prior to the time the Container was packed.

**11.3** The Merchant is responsible for the packing and sealing of all FCL Containers and, if a FCL Container is delivered by the Carrier with its original seal as affixed by the Shipper intact, the Carrier shall not be liable for any shortage of Goods ascertained at delivery.

**11.4** The Shipper shall inspect Containers before packing them and the use of Containers shall be prima facie evidence of their being sound and suitable for use.

# 12. PERISHABLE CARGO

**12.1** Goods, including Goods of a perishable nature, shall be carried in ordinary Containers without special protection, services or other measures unless there is noted on the reverse side of this TD that the Goods will be carried in a refrigerated, heated, electrically ventilated or otherwise specifically equipped Container or are to receive special attention in any way. The Merchant undertakes not to tender for Carriage any Goods which require refrigeration, ventilation or any other specialised attention without giving written notice of their nature and the particular temperature of supply air to be maintained or other setting of the thermostatic, ventilation or other special controls. If the above requirements are not complied with, the Carrier shall not be liable for any loss of or damage to the Goods howsoever arising.

**12.2** Temperature instructions given by the Merchant for temperature controlled Containers will always relate to the supply air temperature range to be maintained by the Carrier during the Carriage. The Carrier will not guarantee any temperature range inside the Container. The temperature of the Goods upon delivery to or loading on board of the Vessel is not to be controlled by the Carrier and will be the sole responsibility of the Merchant. The Carrier does not guarantee the maintenance of any intended level of humidity inside any Container.

**12.3** The term "apparent good order and condition" when used in this TD with reference to goods which require refrigeration, ventilation or other specialised attention does not mean that the Goods, when received, were verified by the Carrier as being at the carrying temperature, humidity level or other condition designated by the Merchant.

**12.4** The Carrier shall not be liable for any loss of or damage to the Goods arising from latent defects, derangement, breakdown, defrosting, stoppage of the refrigerating, ventilating or any other specialised machinery, plant, insulation and/or apparatus of the Container, Vessel, conveyance and any other facilities, provided that the Carrier shall before and at the beginning of the Carriage exercise due diligence to maintain the Container supplied by the Carrier in an efficient state.

# 13. INSPECTION OF GOODS

The Carrier shall be entitled, but under no obligation, to open and/or scan any Package or Container at any time and to inspect the contents. If it appears at any time that the Goods cannot safely or properly be carried or carried further, either at all or without incurring any additional expense or taking any measures in relation to the Container or the Goods, the Carrier may without notice to the Merchant (but as his agent only) take any measures and/or incur any reasonable additional expense to carry or to continue the Carriage thereof, and/or to sell or dispose of the Goods and/or to abandon the Carriage and/or to store them ashore or afloat, under cover or in the open, at any place, whichever the Carrier in his absolute discretion considers most appropriate, which sale, disposal, abandonment or storage shall be deemed to constitute due delivery under this TD. The Merchant shall indemnify the Carrier against any reasonable additional expense so incurred. The Carrier in exercising the liberties contained in this clause shall not be under any obligation to take any particular measures and shall not be liable for any loss, delay or damage howsoever arising from any action or lack of action under this clause.

# 14. DESCRIPTION OF GOODS

**14.1** This TD shall be prima facie evidence of the receipt by the Carrier in apparent good order and condition, except as otherwise noted, of the total number of Containers or other packages or units indicated in the box on the reverse side hereof entitled "Particulars furnished by Shipper".

**14.2** No representation is made by the Carrier as to the weight, contents, measure, quantity, quality, description, condition, marks, numbers or value of the Goods and the Carrier shall be under no responsibility whatsoever in respect of such description or particulars.

**14.3** The Shipper warrants to the Carrier that the particulars relating to the Goods as set out on the reverse hereof have been checked by the Shipper on receipt of this TD and that such particulars, and any other particulars furnished by or on behalf of the Shipper, are adequate and correct. The Shipper also warrants that the Goods are lawful goods, and contain no contraband, drugs, stowaways or other illegal substances, and that the Goods will not cause loss, damage or expense to the Carrier, or to any other cargo.

**14.4** If any particulars of any letter of credit and/or import/license and/or sales contract and/or invoice or order number and/or details of any contract to which the Carrier is not a party are shown on the face of this TD, such particulars are included at the sole risk of the Merchant and for his convenience. The Merchant agrees that the inclusion of such particulars shall not be regarded as a declaration of value and in no way increases Carrier's liability under this TD.

# 15. MERCHANT'S RESPONSIBILITY

**15.1** All of the Persons coming within the definition of Merchant in clause 1 shall be jointly and severally liable to the Carrier for the due fulfilment of all obligations undertaken by the Merchant in this TD.

**15.2** The Merchant shall be liable for and shall indemnify the Carrier against all loss, damage, delay, fines, attorney fees and/or expenses arising from any breach of any of the warranties in clause 14.3 or elsewhere in this TD and from any other cause whatsoever in connection with the Goods for which the Carrier is not responsible.

**15.3** The Merchant shall comply with all regulations or requirements of customs, port and other authorities, and shall bear and pay all duties, taxes, fines, imposts, expenses or losses (including, without prejudice to the generality of the foregoing Freight for any additional Carriage undertaken) incurred or suffered by reason of any failure to so comply, or by reason of any illegal, incorrect or insufficient declaration, marking, numbering or addressing of the Goods, and shall indemnify the Carrier in respect thereof.

**15.4** If Containers supplied by or on behalf of the Carrier are unpacked at the Merchant's premises, the Merchant is responsible for returning the empty Containers, with interiors clean, odour free and in the same condition as received, to the point or place designated by the Carrier, within the time prescribed. Should a Container not be returned in the condition required and/or within the time prescribed in the Tariff, the Merchant shall be liable for any detention, loss or expense incurred as a result thereof.

**15.5** Containers released into the care of the Merchant for packing, unpacking or any other purpose whatsoever are at the sole risk of the Merchant until redelivered to the Carrier. The Merchant shall indemnify the Carrier for all loss of and/or damage and/or delay to such Containers. Merchants are deemed to be aware of the dimensions and capacity of any Containers released to them.

# 16. FREIGHT, EXPENSES AND FEES

**16.1** Full Freight shall be payable based on particulars furnished by or on behalf of the Shipper. The Carrier may at any time open the Goods or Container(s) and, if the Shipper's particulars are incorrect the Merchant and the Goods shall be liable for the correct Freight and any expenses incurred in examining, weighing, measuring, or valuing the Goods.

**16.2** Full Freight shall be considered completely earned on receipt of the Goods by the Carrier and shall be paid and non returnable in any event.

**16.3** All sums payable to the Carrier are due on demand and shall be paid in full in United States currency or, at the Carrier's option, in its equivalent in the currency of the Port of Loading or of Discharge or the Place of Receipt or of Delivery or as specified in the Carrier's Tariff.

**16.4** The Merchant's attention is drawn to the stipulations concerning currency in which the Freight is to be paid, rate of exchange, devaluation, additional insurance premium and other contingencies relative to Freight in the applicable Tariff.

**16.5** All Freight shall be paid without any set-off, counter-claim, deduction or stay of execution at latest before delivery of the Goods.

**16.6** If the Merchant fails to pay the Freight when due he shall be liable also for the payment of reasonable attorney fees and expenses incurred in collecting any sums due to the Carrier. Payment of Freight and charges to a freight forwarder, broker or anyone other than the Carrier or its authorised agent, shall not be deemed payment to the Carrier and shall be made at the Merchant's sole risk.

## 17. LIEN

The Carrier shall have a lien on the Goods and any documents relating thereto for all sums payable to the Carrier by the Merchant under this or any other contract and for general average contributions to whomsoever due. The Carrier may exercise his lien at any time and any place in his sole discretion, whether the contractual Carriage is completed or not. In any event any lien shall extend to cover the cost of recovering any sums due and for that purpose the Carrier shall have the right to sell the Goods by public auction or private treaty, without notice to the Merchant. The Carrier's lien shall survive delivery of the Goods.

# 18. OPTIONAL STOWAGE, DECK CARGO AND LIVESTOCK

**18.1** The Goods may be packed by the Carrier in Containers and consolidated with other goods in Containers.

**18.2** Goods whether packed in containers or not, may be carried on deck or under deck without notice to the Merchant unless on the reverse side hereof it is specifically stipulated that the Containers or Goods will be carried under deck. If carried on deck, the Carrier shall not be required to note, mark or stamp on the TD any statement of such on-deck carriage. Save as provided in clause 18.3, such Goods (except livestock) carried on or under deck and whether or not stated to be carried on deck shall participate in general average and shall be deemed to be within the definition of goods for the purpose of the Hague Rules or US COGSA and shall be carried subject to such Rules or Act, whichever is applicable.

**18.3** Goods (not being Goods stowed in Containers other than flats or pallets) which are stated herein to be carried on deck and livestock, whether or not carried on deck, are carried without responsibility on the part of the Carrier for loss or damage of whatsoever nature or delay arising during the Carriage whether caused by unseaworthiness or negligence or any other cause whatsoever and neither the Hague Rules nor US COGSA shall apply.

# 19. METHODS AND ROUTES OF CARRIAGE

**19.1** The Carrier may at any time and without notice to the Merchant:

**(a)** use any means of transport or storage whatsoever;

**(b)** transfer the Goods from one conveyance to another including transshipping or carrying the same on a Vessel other than the Vessel named on the reverse hereof or by any other means of transport whatsoever and even though transshipment or forwarding of the Goods may not have been contemplated or provided for herein;

**(c)** unpack and remove the Goods which have been packed into a Container and forward them via Container or otherwise;

**(d)** sail without pilots, proceed via any route, (whether or not the nearest or most direct or customary or advertised route) at any speed and proceed to, return to and stay at any port or place whatsoever (including the port of loading herein provided) once or more often, and in any order in or out of the route or in a contrary direction to or beyond the port of discharge once or more often;

**(e)** load and unload the Goods at any place or port (whether or not any such port is named on the reverse hereof as the Port of Loading or Port of Discharge) and store the Goods at any such port or place;

**(f)** comply with any orders or recommendations given by any government or authority or any Person or body purporting to act as or on behalf of such government or authority or having under the terms of the insurance on any conveyance employed by the Carrier the right to give orders or directions.

**19.2** The liberties set out in clause 19.1 may be invoked by the Carrier for any purpose whatsoever whether or not connected with the Carriage of the Goods. Anything done or not done in accordance with clause 19.1 or any delay arising therefrom shall be deemed to be within the contractual Carriage and shall not be a deviation.

# 20. MATTERS AFFECTING PERFORMANCE

If at any time Carriage is or is likely to be affected by any hindrance, risk, danger, delay, difficulty or disadvantage of whatsoever kind and howsoever arising which cannot be avoided by the exercise of reasonable endeavours, (even though the circumstances giving rise to such hindrance, risk, danger, delay, difficulty or disadvantage existed at the time this contract was entered into or the Goods were received for Carriage) the Carrier may at his sole discretion and without notice to the Merchant and whether or not the Carriage is commenced either:

**(a)** Carry the Goods to the contracted Port of Discharge or Place of Delivery, whichever is applicable, by an alternative route to that indicated in this TD or that which is usual for Goods consigned to that Port of Discharge or Place of Delivery. If the Carrier elects to invoke the terms of this clause 20(a) then, notwithstanding the provisions of clause 19 hereof, he shall be entitled to charge such additional Freight as the Carrier may determine; or

**(b)** Suspend the Carriage of the Goods and store them ashore or afloat upon the Terms and Conditions and endeavour to forward them as soon as possible, but the Carrier makes no representations as to the maximum period of suspension. If the Carrier elects to invoke the terms of this clause 20(b) then, notwithstanding the provisions of clause 19 hereof, he shall be entitled to charge such additional Freight and other costs as the Carrier may determine; or

**(c)** Abandon the Carriage of the Goods and place them at the Merchant's disposal at any place or port, which the Carrier may deem safe and convenient, whereupon the responsibility of the Carrier in respect of such Goods shall cease. The Carrier shall nevertheless be entitled to full Freight on the Goods received for the Carriage, and the Merchant shall pay any additional costs incurred by reason of the abandonment of the Goods.

If the Carrier elects to use an alternative route under clause 20(a) or to suspend the Carriage under clause 20(b) this shall not prejudice his right subsequently to abandon the Carriage.

# 21. DANGEROUS GOODS

**21.1** No Goods which are or which may become of a dangerous, noxious, hazardous, flammable, or damaging nature (including radio-active material) or which are or may become liable to damage any Persons or property whatsoever, and whether or not so listed in any official or unofficial, international or national code, convention, listing or table shall be tendered to the Carrier for Carriage without previously giving written notice of their nature, character, name, label and classification (if applicable) to the Carrier and obtaining his consent in writing and without distinctly marking the Goods and the Container or other covering on the outside so as to indicate the nature and character of any such Goods and so as to comply with any applicable laws, regulations or requirements. If any such Goods are delivered to the Carrier without obtaining his consent and/or such marking, or if in the opinion of the Carrier the Goods are or are liable to become of a dangerous, noxious, hazardous, flammable or damaging nature, they may at any time or place be unloaded, destroyed, disposed of, abandoned or rendered harmless without compensation to the Merchant and without prejudice to the Carrier's right to Freight.

**21.2** The Merchant warrants that such Goods are packed in a manner adequate to withstand the risks of Carriage having regard to their nature and in compliance with all laws, regulations or requirements which may be applicable to the Carriage.

**21.3** The Merchant shall indemnify the Carrier against all claims, liabilities, loss, damage, delay, costs, fines and/or expenses arising in consequence of the Carriage of such Goods, and/or arising from breach of any of the warranties in clause 21.2 including any steps taken by the Carrier pursuant to clause 21.1 whether or not the Merchant was aware of the nature of such Goods.

**21.4** Nothing contained in this clause shall deprive the Carrier of any of his rights provided for elsewhere.

# 22. NOTIFICATION, DISCHARGE AND DELIVERY

**22.1** Any mentioning in this TD of parties to be notified of the arrival of the Goods is solely for information of the Carrier. Failure to give such notification shall not involve the Carrier in any liability nor relieve the Merchant of any obligation hereunder.

**22.2** If no Place of Delivery is named on the reverse hereof, the Carrier shall be at liberty to discharge the Goods at the Port of Discharge without notice to the Merchant, directly as they come to hand, at or onto any wharf, craft, vehicle or place, on any day and at any time, whereupon the liability of the Carrier (if any) in respect of the Goods discharged as aforesaid, shall wholly cease notwithstanding any custom of the Port to the contrary and notwithstanding any charges, dues or other expenses that may be or become payable.  The Merchant shall take delivery of the Goods upon discharge.  If the Merchant fails to do so, the stevedore or Person into whose hands the Goods are discharged, shall be considered to have taken due delivery of the Goods on behalf of the Merchant.

**22.3** If a Place of Delivery is named on the reverse hereof, the Merchant shall take delivery of the Goods upon arrival of the Goods at such Place of Delivery.  If the Merchant fails to take delivery of the Goods the Person into whose hands the Goods are delivered shall be considered to have taken due delivery of the Goods on behalf of the Merchant.

**22.4** Storage of the Goods shall be for the Merchant's account and at his sole risk.  If the costs of such storage are paid or are payable by the Carrier or any agent or Sub-Contractor of the Carrier, these costs shall forthwith upon demand be paid by the Merchant to the Carrier.

**22.5** If the Merchant fails to remove the Goods within 30 days of delivery becoming due under clause 22.2 or 22.3 or whenever in the Carrier's opinion the Goods are likely to deteriorate, decay or become worthless, or incur charges whether for storage or otherwise in excess of their value, the Carrier may at his discretion and without prejudice to any other rights which he may have against the Merchant, without notice and without any responsibility attaching to him sell, abandon or otherwise dispose of the Goods at the sole risk and expense of the Merchant and apply any proceeds of sale in reduction of the sums due to the Carrier by the Merchant.

**22.6** If, at the place where the Carrier is entitled to call upon the Merchant to take delivery of the Goods under this clause 22.2 or 22.3, the Carrier is obliged to discharge the Goods into the hands of any customs, port or other authority, such discharge shall constitute due delivery of the Goods to the Merchant under this TD.

**22.7** In case of option TD, the Carrier may, in the absence of Merchants' written option declaration, which can only be given for the totality of the Goods, at the latest four days before the arrival at the first optional port or place, elect to discharge at any optional port or place.

**22.8** At any time the Carrier shall be entitled to deliver Goods originally missing.  If a Merchant has a shortage in Goods or numbers of Goods, the Carrier may at his discretion deliver as substitute any surplus goods of similar nature and quality, whether these have different or no marks and numbers at all and the Merchant has to accept delivery of such Goods which shall constitute complete performance of the Carrier's obligations under this TD.

**22.9** In the event more than one Merchant is entitled to delivery of Goods stuffed in a FCL Container (called FCL multiple TD as evidenced by the qualification "one of ... part cargoes in the Container" or similar qualification) :

**(1)** Such Container shall only be released to all Merchants together at a single place or in hands of a single representative agreed by all Merchants.  Failing such agreement the Carrier may unpack the Container and release these Goods to the Merchant on a LCL basis.  In such event the Carrier shall not be liable for any shortage, loss, damage or discrepancies of the Goods, which are found upon the unpacking of the Goods and such release will only be effected against payment by the Merchant of LCL Service Charges and any other charges of whatsoever nature for the additional services.

**(2)** Each Merchant shall bear any shortage/damage in such proportions as the Carrier shall in his absolute discretion determine.

## 23. BOTH-TO-BLAME COLLISION CLAUSE

The Both-to-Blame Collision and New Jason clauses published and/or approved by BIMCO and obtainable from the Carrier or his agent upon request, are hereby incorporated herein.

## 24. GENERAL AVERAGE AND SALVAGE

**24.1** General average to be adjusted at any port or place and in any currency at the Carrier's option and to be settled according to the York-Antwerp Rules 1994, this covering all Goods carried on or under deck. General average on a Vessel not operated by the Carrier shall be adjusted according to the requirements of the operator of that Vessel.

**24.2** Such security including a cash deposit as the Carrier may deem sufficient to cover the estimated contribution of the Goods and any salvage and special charges thereon, shall, if required, be submitted to the Carrier prior to delivery of the Goods. The Carrier shall be under no obligation to exercise any lien for general average contribution due to the Merchant.

**24.3** If a salving ship is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving ship belonged to strangers.

## 25. VARIATION OF THE CONTRACT AND VALIDITY

**25.1** No servant or agent of the Carrier shall have the power to waive or vary any Terms and Conditions unless such waiver or variation is in writing and is specifically authorised or ratified in writing by the Carrier.

**25.2** In the event that anything herein contained is inconsistent with any applicable international convention or national law, which cannot be departed from by private contract, the provisions hereof shall to the extent of such inconsistency but no further be null and void.

## 26. LAW AND JURISDICTION

Any claim or dispute arising under this TD, including third party proceedings or those involving several defendants, shall exclusively be governed by the law and exclusively be determined by the courts of the place where the Carrier has his registered office (to the exclusion of the jurisdiction of the courts of any other place) or, at the Carrier's option if the defendant is not the Carrier, by the courts and according to the law of that place where the defendant has his registered office, but only to the extent that anything else has not been dealt with by the provisions of this TD.

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will automatically send email notification of such filing to all attorneys of record. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the below Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notice of Electronic Filing.

**VIA CM/ECF:**

Harold Kingsley
Kingsley Kingsley & Calkins
91 West Cherry Street
Hicksville, NY 11801
hmk@kingsleyandkingsley.com
Attorneys for Plaintiffs

Stephen H Vengrow
Cichanowicz, Callan, Keane, Vengrow & Textor
61 Broadway, Suite 3000
New York, NY 10006
svengrow@cckvt.com
Attorneys for Co-Defendant


_/s/ Gina M. Venezia_____
Gina M. Venezia