Our File No.: 9109/SHV
CICHANOWICZ, CALLAN, KEANE,
VENGROW & TEXTOR, LLP
Attorneys for Defendant Power Link Logistics
61 Broadway, Suite 3000
New York, New York 10006
(212) 344-7042

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

FEDERAL INSURANCE COMPANY and
MARAN, INC.

|                           | Plaintiff, |
| -against- |

M/V MSC CHINA her engines, boilers, tackle, etc.
POWER LINK LOGISTICS INC. SAFMARINE
CONTAINER LINES N.V.

Defendants.

---

**08cv1806 (SHS)(HP)**

**LAN HOANG DECLARATION
IN SUPPORT OF DEFENDANT POWER
LINK LOGISTICS' MOTION FOR
SUMMARY JUDGMENT DISMISSING
THE COMPLAINT ON THE BASIS OF
*FORUM NON CONVIENENS***

I, Lan Hoang, declare under penalty of perjury under the laws of the United States of America that the following statement is true and correct:

1.      I am the Operations Manager for Power Link Logistics. Except where otherwise specified, I submit this declaration on personal knowledge and in support of Power Link's Motion to Dismiss the Complaint of Plaintiffs Federal Insurance Company and Maran, Inc. (hereinafter referred to as "Plaintiff") against Power Link

2.      Power Link Logistics is a non vessel operating common carrier (NVOCC) licensed to do business in the United States by the Federal Maritime Commission.   As an NVOCC, Power Link arranges for and monitors the logistics for shipments originating or terminating in the United States that are moving under Bills of Lading.

3.      Power Link has only one office in the United States which is located in Carson, California.  Power Link does not have an office, employees or bank accounts in New York

4.      As Operations Manager, I am personally familiar with Power Link's Bill of Lading forms (including reverse side terms and conditions) and Power Link's practices regarding issuance of same.  In the ordinary course of my business, I can obtain from Power Link, or any agent of Power Link, shipping documents issued anywhere in the world for Power Link shipments.

5.      Attached hereto as Exh. D is Power Link's Bill of Lading no. 750336194/001 for the shipment which is the subject of this litigation and Power Link's Terms and Conditions of Service.

6.      Attached hereto as Exhibit E is a copy of a the ocean carrier's, Safmarine, Bill of Lading no. 750336194 for the shipment which is the subject of this lawsuit along with the pertinent Terms and Conditions of Service obtained from Safmarine's website.

7.      Attached hereto as Exhibit F is Safmairne's Arrival Notice for the shipment which is the subject of this lawsuit.

8.      Attached hereto as Exhibit G is Power Link's Invoice no. 0048153 for the shipment which is the subject of this lawsuit.  Power  Link charged a $50 handling fee for the shipment of two containers, one of which is the subject of this lawsuit.

9.      The African shipper, Global Garments Company, the shipper on the Power Link Bill of Lading, contacted ZA Trans in South Africa to arrange for the ocean transport of the subject shipment.

10.      ZA Trans booked the shipment with the ocean carrier, Safmarine, in South Africa and contacted Power Link to arrange the delivery of the shipment in the United States.  Power Link acted as U.S. agent for ZA Trans with regard to the subject shipment.

11.     Power Link in California confirmed the booking details executed in South Africa with Maran in New Jersey.

12.     Maran routinely books cargo from South Africa to the United States.  In 2007, it is estimated that Maran booked (100) one-hundred shipments from South Africa to the United States using Power Links services.


I declare under penalty of perjury that the foregoing is true and correct.


Dated: Carson California
        May 15, 2008


_____
Lan Hoang, Operations Manager
*for Power Link Logistics*

# EXHIBIT D

# POWER LINK LOGISTICS' MOTION FOR SUMMARY JUDGMENT DISMISSING THE COMPLAINT ON THE BASIS OF *FORUM NON CONVIENENS*

# POWER LINK LOGISTIC INC.

| BILL OF LADING | B/L NO. | 750336194/001 |

(Continued from Reverse Side)
NOT NEGOTIABLE UNLESS CONSIGNED "TO ORDER"

**Shipper/Exporter (complete name and address)**

GLBOAL GARMENTS COMPANY (PTY) LTD
SITE NO. 12293-827
THETSANE INDUSTRIAL AREA MASERU, LESOTHO
TEL +266-22312544 FAX +266-22312445

**DOCUMENT NO.**

**EXPORT REFERENCES**

**Consignee (complete name and address)**

CITIBANK NA NEW YORK USA

**FORWARDING AGENT REFERENCES**

**POINT AND COUNTRY OF ORIGIN**

**Notify party (complete name and address)**

MARAN INC
4301 4315 TONNELLE AVENUE
NORTH BERGEN NJ 07047 USA

**DOMESTIC ROUTING/EXPORT INSTRUCTIONS**

| Place of receipt | Pre-carriage by | FOR DELIVERY APPLY TO: |
| Vessel/Voy **MSC CHINA  N350** | Port of Loading **DURBAN** | |
| Port of discharge **NEWARK** | Place of delivery **NEW YORK** | |

PARTICULARS FURNISHED BY SHIPPER

| Marks and numbers | No. of pkgs | Description of packages and goods | Gross weight | Measurement |

2X40'GP     SAID TO CONTAIN 1660CTNS        19,557.68(KGS)  107.686(CBM)
VVVVVVV  SHIPPER'S LOAD & COUNT & SEAL
KNLU4309468/40'GP/MLZA0947842/9,846.40KGS/53.299CBM/905 CTNS/CY-CY
TEXU4748218/40'GP/MLZA0947843/9,711.28KGS/54.388CBM/755CTNS/CY-CY

SEE ATTACHED                    SEE ATTACHED

COPY
NOT NEGOTIABLE

"FREIGHT COLLECT"  SVC TYPE:CY-CY
SAY TOTAL TWO (2) FORTY FEET GENERAL PURPOSE CONTAINERS ONLY

| Freight and charges | Prepaid | Collect |

OCEAN FREIGHT              AS ARRANGED

RECEIVED the goods or the containers, vans, trailers, palletboards or other packages said to contain goods herein mentioned in apparent good order and condition, except as otherwise indicated, to be transported, carried and delivered as provided therein. All of the provisions whether printed or stamped on either side hereof are part of this Bill of Lading contract. IN WITNESS WHEREOF, the master or agent of said vessel has signed __ (THREE) original Bills of Lading, all of this same tenor and date, ONE of which being accomplished, the others to stand void.
Declared Cargo Value $_____ (if merchant enters a value Carrier's limitation of liability shall not apply and the ad valorem rate will be charged). Otherwise, on the reverse said hereof (this carrier's liability to a maximum of U.S. $500 per package or customary freight unit by virtue of incorporation of the U.S. carriage of Goods by Sea Act 1936 unless merchant declares a higher value above and pays Carrier's Valorem freight charge.

**POWER LINK LOGISTIC INC.**

By: _____ (as carrier)
Month JUNE    Day 09    Year 2007

| Total prepaid | | |
| Total collect | | |

# ATTACHMENT

Page: 1

SO:6194            B/L NO:750336194/001

| MARKS AND NUMBER | DESCRIPTION OF PACKAGES AND GOODS | |
|---|---|---|

KNLU409468
MCZA0947842

1X40'GP CONTAINER STC
905 CTNS /678.75DZ

GOODS(WOVEN GARMENTS)
HTS#6204.62.40.1179819.11.1200
CAT:348

LADIES FG PLUS 16W-26W 75%
CTN 24% POLY 1% SPX,11.50Z
WOVEN STRETCH 5PKT BLUE BLACK
DENIM JEANS W/EMB AND BRAIDED BELT
PO NO:9308-73
STYLE NO:FGW37421
COLOUR:DARK STONE

TEXU4748216
MLZA0947843

1X40'GP CONTAINER STC
755 CTNS /714.75DZ

GOODS(WOVEN GARMENTS)
HTS#6204.62.40.11/9819.11.1200
CAT:348

LADIES FG PLUS 16W-26W 75%
CTN 24% POLY 1% SPX,11.50Z
WOVEN STRETCH 5PKT BLUE BLACK
DENIM JEANS W/EMB AND BRAIDED BELT
PO NO:9308-73
STYLE NO:FGW37421
COLOUR:DARK STONE
161 CTNS /120.75DZ

PO NO:9308-74
STYLE NO:FGW37421
COLOUR:DARK STONE
594 CTNS /594DZ

L/C NR.5817095504
SHIPPING MARKS AS PER COMMERICAL
INVOICE NR.33070223

ON BOARD NOTATION:
FM DURBAN,SOUTH AFRICA TO NEW YORK
VESSEL NAME :MSC CHINA V.N350
ON BOARD DATE : JUNE.09,2007

**1. DEFINITION** In this Bill of Lading the term "Vessel" means the intended Ocean Vessel on the front hereof and any vessel craft lighter or other means of conveyance by water which is or shall be substituted in whole or in part for such named ocean vessel and also includes any other vessel onto which Goods may be loaded for the purpose of being transported therein in furtherance of the carriage covered by this Bill of Lading or any part thereof.

The term "Carrier" means **POWER LINK LOGISTIC, INC.**

The term "Merchant" means the shipper consignor, consignee the holder of this Bill of Lading and/or the receiver of the owner of the Goods.

The term "Container" means any container, trailer, transportable tank, flat pallet or other form of cargo carrying unit or equipment referred to on the face hereof or in or on which any Goods may be carried or otherwise packed or stored when received by the Carrier for carriage hereunder or subsequent to such receipt.

The terms "Place of Receipt" " intended Port of Loading" "intended Port of Discharge" and "intended Place of Delivery" means respectively the place of receipt, port of loading (Ocean Vessel), port of discharge (Ocean Vessel) and place of delivery nominated on the front hereof and

The terms "Goods" means the cargo received from the Shipper and includes any Container(s) supplied by or on behalf of any other than the carrier

**2. CARRIER'S RESPONSIBILITY** (a) Subject to Clause 8 and 9 hereof the liability (if any) of the Carrier in respect of the Goods during the period commencing with their being loaded onto any sea going vessel and continuing up to and during discharge from that vessel or from another sea going vessel into which the Goods shall have been transhipped shall be determined in accordance with the provisions of the Carriage of Goods by Sea Act of the United States of America approved April 16, 1936 which shall be deemed to be incorporated herein and in accordance with the terms and conditions of this Bill of Lading or other contract of carriage of the sub contractor responsible for the carriage of such Goods by sea all of which terms and conditions to the extent that they are not in conflict with the express provisions of this Bill of Lading are incorporated herein.

(b) Save as provided in (a) hereof and where the cargo is in the custody or liability is any capacity whatsoever for loss or underdelivery of or damage to the Goods howsoever caused whether or not through the negligence of the Carrier his servants or agents or sub contractors or for any direct or indirect loss or damage caused by delay or for any indirect or consequential loss or damage.

(c) In the event of any loss or underdelivery or delay in delivery of or damage to the Goods occurring between the time that the Goods are received by the Carrier at the Place of Receipt and the time of delivery at the intended Place of Delivery, the onus of proving that such loss underdelivery delay in delivery or damage for any part thereof occurred during the period specified in Clause (a) hereof shall be upon the Merchant. In the event that the Merchant is unable to discharge such onus of proof the Carrier shall be under no liability for such loss, underdelay, delay in delivery of or damage to the Goods for any part thereof in accordance with (b) hereof

(d) INSURANCE WILL NOT BE ARRANGED BY THE CARRIER EXCEPT WITH THE EXPRESS INSTRUCTIONS IN WRITING OF THE CONSIGNOR AND THEN ONLY AT HIS EXPENSE AND AGREEMENT OF A DECLARATION AS TO VALUE PRIOR TO SHIPMENT.

**3. LIMITATION OF LIABILITY** Insofar as loss of or damage to or in connection with the Goods is caused during the part of the custody of carriage to which U.S. COGSA applies (1) the Carrier shall not be liable for loss or damage in an amount exceeding the minimum allowed as per package or unit (U.S. $500) unless the value (and nature) of the Goods higher than this amount has been declared in writing by the Merchant before receipt of the Goods by the Carrier and inserted on the face of this Bill of Lading and extra freight has been paid if required if the actual value of the Goods per package or unit exceeds such declared value, the value shall nevertheless be deemed to be the declared value and this Bill of Lading. If any, shall not exceed the declared value. Any partial loss or damage shall be adjusted pro rata on the basis of such declared value. (2) If the Goods have been packed into a Container (as defined in Clause 11) or unitized into a similar article of transport by or on behalf of the Merchant. It is expressly agreed that the number of such Containers or similar articles of transport shown on the face of this Bill of Lading shall be considered to be the number of packages or units for the purpose of the application of the limitation of liability provided for in this clause.

**4. CONTRACTING PARTIES** In agreeing to and accepting the terms of this Bill of Lading the Shipper acts for himself and on behalf of each Merchant. The Shipper warrants to the Carrier that he is entitled and is duly authorized by any other person who owns or is entitled to possession of the Goods or the Bill of Lading to agree to and accept this Bill of Lading and to deliver the Goods to the Carrier on the terms hereof. Without prejudice to the foregoing each Merchant agrees that in accepting this Bill of Lading from the Carrier and also in accepting endorsement or delivery hereof from the Shipper Consignee or any other prior endorsee or holder and delivery of the Goods he confirms, ratifies and agrees to be bound by all of the stipulations exceptions and conditions raised herein whether written printed, stamped or otherwise incorporated on the front or back hereof and that the contract contained or evidenced herein shall be fully binding between the Carrier and such Merchant as all respects.

Each Merchant agrees also that all agreements and freight arrangements previously made for the carriage of the Goods are superseded by the original contained or evidence herein.

**5. SUB-CONTRACTING: Exemptions and Immunities of Servants, Agents and Sub-Contractors** - The Carrier shall be entitled to sub contract on any terms the whole or any part of the carriage loading unloading storing warehousing handling and any and all duties whatsoever undertaken by the Carrier in relation to the Goods. The Merchant shall make no claim whatsoever in relation to the Goods against any servant agent or sub contractor of the Carrier or its servant or agents and shall further indemnify the Carrier against any claim which may be made upon the Carrier by any such servants agent or sub contractor and which arise out of any claim whether arising in negligence or otherwise in relation to the Goods against whatsoever made by the Merchant... Without prejudice to the foregoing every such servant agent and sub contractor shall have the benefit of all provisions herein for the benefit of the Carrier as if such provisions were expressly for their benefit and in entering into this contract the Carrier to the extent of these provisions does so not only on its own behalf but also as agent and trustee for such servants, agents and sub contractors.

The Merchant authorizes the Carrier to arrange for any ocean carriage required under this Bill of Lading to be performed by any ocean carrier on the terms and conditions of the regular form of Bill of Lading in use by such ocean carrier.

**6. ROUTE OF TRANSPORT** (a) The Goods may at the Carrier's absolute discretion be carried as a single or several shipments by Vessel and/or any other means of transport and through any route whatsoever whether or not such route is the direct advertised or customary route. (b) Any action taken by the Carrier under the Clause or resulting therefrom shall be deemed to be included within the contractual carriage and shall not be a deviation. Should the Carrier be held liable in respect of such action the Carrier shall be entitled to the full benefit of all privileges, rights and immunities contained in this Bill of Lading.

**7. CONTAINER PACKED BY CARRIER** - Where Goods received for carriage under this Bill of Lading are not already contained in or on Container(s) at the time of such receipt the Carrier shall be at liberty to carry such Goods in or on Container(s).

**8. CONTAINER PACKED BY MERCHANT** - If the Goods accepted by the Carrier in a Container(s) into which contents have been packed by or on behalf of the Merchant.

(a) the Merchant guarantees that the stowage of the contents in Container(s) and the closing and sealing of the Container(s) are safe and proper and also that the Container(s) and contents thereof are suitable for handling and carriage in accordance with the terms hereof in the event of the Merchant's breach of such guarantee the Carrier shall not be responsible for any loss of or damage to or in connection with the Goods and the Merchant shall be responsible for all consequences of whatsoever kind of such breach and shall indemnify the Carrier against any loss damage expense or liability which the Carrier suffers or incurs as a consequence of such breach.

(b) the Merchant shall inspect the Container(s) when the same are furnished by or on behalf of the Carrier and they shall be deemed to have been accepted by the Merchant as being in sound and suitable condition for the purpose of the transport contracted herein unless he gives notice to the contrary in writing to the Carrier prior to packing the Container(s).

(c) if the Container(s) are delivered from the Carrier with seals intact such delivery shall be deemed as the full and complete performance of the Carrier's obligation hereunder and the Carrier shall not be liable for any loss of or damage to the contents of the Container(s).

(d) the Carrier shall be at liberty to inspect the contents of the contents of the Container(s) without notice to the Merchant at such time and place as the Carrier may deem necessary all expenses incurred in respect thereof being borne by the Merchant and in case the seals of the Container(s) are broken by the Customs or other authorities for inspection of the contents of the said Container(s) the Carrier shall not be liable for any loss damage expenses or any other consequences arising or resulting therefrom and

(e) this Bill of Lading is prima facie evidence of the receipt only of the number of Container(s) as shown on the face hereof and the order and condition of the contents and any particulars thereof are unknown to the Carrier who accepts no responsibility in respect thereof

**9. CARRIER'S CONTAINER** (a) The Merchant shall assume full responsibility for and shall indemnify the Carrier against any loss of or damage to the Carrier's Container(s) and other equipment which occurs while in the possession or control of the Merchant, its agents or sub contractors engaged by or on behalf of the Merchant.

(b) The Carrier shall in no event be liable for and the Merchant shall indemnify and hold the Carrier harmless from and against any loss of or damage to property of other persons or injuries to other persons caused by the Carrier's Container or the contents thereof during handling by or while in the possession or control of the Merchant, its agent or subcontractors engaged by or on behalf of the Merchant.

**10. RETURN OF CONTAINERS** In case Goods are delivered in Container(s) which the Carrier owns or is the possession of which the Carrier is otherwise entitled the Merchant taking delivery shall return such Container(s) promptly.

**11. DESCRIPTION AND PARTICULARS OF GOODS** (a) The description and particulars of the Goods set out on the face hereof are furnished by the Merchant and are unknown to the Carrier who shall be under no responsibility whatsoever in respect of such description and particulars.

(b) The Merchant warrants to the Carrier that the particulars relating to the Goods as set out on the front hereof and any other particulars inserted by or on behalf of the Merchant are correct and shall indemnify the Carrier against all loss damage expenses and liability (including fines, penalties and fines) suffered or incurred by the Carrier as a result of the Merchant being in breach of such warranty

**12. FREIGHT AND CHARGES** (a) The freight payable hereunder has been calculated and based on particulars of the Goods furnished or on behalf of the Merchant. The Carrier shall be entitled at any time to reweigh remeasure or revalue the Goods shall for this purpose and move and ascertain the contents of any Container(s) and if the particulars furnished are found to be incorrect the freight shall be adjusted accordingly and the Merchant shall also pay any expenses incurred by the Carrier in checking the said particulars.

(b) Freight shall be deemed earned on receipt of the Goods by the Carrier and shall be paid by the Merchant Goods and or conveyance or not lost.

(c) Except to the extent (if any) to which they may be inconsistent with any of the express term of this Bill of Lading the terms of the Carrier applicable tariff current at the time when the Goods were received by the Carrier for carriage under this Bill of Lading are incorporated in this Bill of Lading and form part of the contract contained or evidenced herein.

**13. LIEN** (a) The Carrier shall have a lien on the Goods which shall survive delivery for any sums whatsoever payable by or chargeable for the account of the Merchant under this Bill of Lading and any contract preliminary hereto and the cost and expenses of recovering same may sell the Goods privately or by public auction without notice to the Merchant. If on sale of the Goods the proceeds fail to cover the amount due and the cost and expenses incurred the Carrier shall be entitled to recover the deficit from the Merchant.

(b) If the Goods are unclaimed during a reasonable time or whenever in the Carrier's opinion the Goods will become deteriorated decayed or worthless the Carrier may at his discretion and subject to his lien and without any responsibilities attaching to him, sell, abandon or otherwise dispose of such Goods solely at the risk and expense of the Merchant.

**14. EXPENSES** The Merchant shall be liable for and shall indemnify the Carrier and hold it harmless against all loss damage, expenses and liability including taxes, penalties and fines of whatsoever nature suffered or incurred by the Carrier in connection with the Goods or the Container(s) because of failure by the Merchant to procure consular Department of Health or other permits or any paper may be required as part or place in connection with the Goods or to supply information or otherwise to comply with all laws and legal in connection with the Goods or any expenses on their payments incurred in accordance with Paragraph 18 (a) and (b) hereof or from any of or omission of the Merchant and also against all damages charges legal fees and other expenses which the Carrier is liable to incur in connection with attachments seizures executions claims or legal proceedings of any description against Goods by third parties or any proceedings for adjustment of intrapleader or otherwise which the Carrier may bring to determine the right or ownership or possession or to the Goods or Container also against any expenses or charges for inquiring or attempting to gain possession of the Goods or Container(s). The Merchant authorizes the Carrier to pay and/or incur such costs expenses and charges and to do any matters mentioned above at his expense and at his and engage other persons to inquire or seek to regain possession of Goods or Container(s) and do all things deemed advisable for the retention of Goods or Container(s) The Merchant and the Goods shall be jointly and severally liable for the payment of any sums due to the Carrier hereunder by the Merchant without in any way limiting the generality of the foregoing the Merchant shall indemnify the Carrier in respect of any dues or duties or other charges which the Carrier becomes legally liable to pay and pays to any governmental customs or other authority in respect of the goods.

**15. DANGEROUS GOODS AND CONTRABAND** Goods of an inflammable explosive radioactive corrosive damaging noxious hazardous poisonous injurious or dangerous nature must not be tendered for carriage hereunder unless written notice of their nature name label characteristics and the method of rendering the said Goods innocuous with the names and addresses of the shipper and consignee has been previously given to the Carrier and their nature is distinctly marked on the outside of the Container(s) package(s) or piece(s) as required by applicable statutes or regulations. The foregoing written notice shall bear the certificate required by applicable statutes or regulations to certify that Goods are properly described packed and marked and in proper condition for transportation according to the regulations prescribed. I competent authority if any Goods tendered for carriage without previous written declaration are or at any time become of the above mentioned nature or are or become contraband as prohibited by any law or regulations of any port or place of loading discharge or call or any place or transit whether the Merchant is aware thereof or not such Goods upon discovery at any time may be unloaded thrown overboard discharged at any port or place or otherwise disposed of at Carrier's or sub contractor's discretion without any liability attaching there without prejudice to the Carrier's right to freight and any other charges payable hereunder The foregoing provisions shall also apply such Goods tendered for carriage with such previous declaration which in the opinion of the Carrier or its sub contractors have or at become dangerous to the Carrier Vessel Cargo or other property or person The Merchant shall be liable to indemnify the Carrier against loss, damage, expenses and liabilities (including taxes, penalties and fines) suffered or incurred by the Carrier as a result of the carriage of such Goods The Carrier reserves the right that shall have no obligation to ship Container(s) packed by or on behalf of the Merchant examine the contents thereof and arrange for rearrange reconsignage or reconsignment at the Carrier's or the sub contractor's discretion the Merchant's risk and expense.

**16. SPECIAL CONTAINER** (a) The Carrier does not undertake to carry the Goods in refrigerated heated insulated ventilated or any special Container(s) nor to carry special Container(s) packed by or on behalf of the Merchant as such but the Carrier will insert such Goods or Container(s) only as ordinary goods or Container(s) respectively unless special arrangements for the carriage of such Goods or Container have been agreed to in writing between the Carrier and the Merchant and unless such special arrangements are noted on the face of this Bill of Lading and unless special freight as required has been paid The Carrier does not accept responsibility for the proper functioning of Special Container(s) supplied by or on behalf of the Merchant.

(b) As regards the Goods which have been agreed to be carried in special Container(s) the Carrier shall exercise due diligence to maintain the facilities of the special Container(s) while they are in its actual custody and control but shall not be liable for any loss or damage to Goods caused by latent defects derangement or breakdown of facilities of the Container(s).

(c) If the Goods have been packed into refrigerated Container(s) by the Carrier and the particular temperature range requested Merchant is inserted in this Bill of Lading the Carrier will set the thermostatic controls within the requested temperature range but does guarantee the maintenance of such temperature inside the Container(s).

(d) If the Goods have been received by the Carrier in Container(s) which have been packed by or on behalf of the Merchant the obligation of the Merchant to stow the contents properly and set the thermostatic controls exactly The Carrier shall not be liable for any or damage to the Goods arising out of or resulting from the Merchant's failure in such obligation and further does not guarantee the maintenance of the intended temperature inside the Container(s).

**17. DECK CARGO** The Carrier has the right to carry Goods under deck or on deck on any vessel.

**18. TRANSHIPMENT AND FORWARDING** (a) Whether arranged beforehand or not the Carrier shall be at liberty without notice to the contract of carriage evidenced hereby wholly or partly by the named or any other vessel(s) or craft or by any vehicle aircraft or other of transport by water land or air whether owned or operated by the Carrier or others The Carrier may under any circumstances what discharge the Goods or any part thereof at any port or place for transhipment and store the same afloat or ashore and then forward the by any means of transport

(b) In case the Goods hereby specified cannot be found at the port of discharge or the Place of Delivery or if they be discharged there found may be forwarded to their intended port of discharge or Place of Delivery at the Carrier's expense but the Carrier shall not be for any loss damage delay or depreciation arising from such forwarding.

**19. DELIVERY** (a) The Carrier shall have the right to deliver the Goods at any time from or at the Vessel's side custom house wharf or any other place designated by the Carrier within the geographic limits of the intended Port of Discharge or the intended Place of Delivery shown on the face hereof.

(b) If any case the Carrier's responsibility shall cease when the Goods have been delivered to the Merchant his servants agents or factors or any other person entitled to receive the Goods on his behalf at the place designated by the Carrier Delivery of the custody of customs or other authorities shall constitute final discharge of the Carrier's responsibility hereunder.

(c) In case the Goods received by the Carrier are Container(s) into which have been packed by or on behalf of the Merchant shall only be responsible for delivery of the total number of Container(s) and deliver the contents thereof in accordance with Instructions numbers sizes or types of packages or pieces.

(d) In case the Goods have been packed into Container(s) by the Carrier then shall unpack the Container(s) and deliver the thereof and shall not be required to deliver the goods in containers.

(e) In the event that the Carrier delivers the Goods from any customs house bond store or any other places as is prescribed (a) hereof as is prescribed in Clause 18 (a) hereof the Merchant shall be liable to pay and shall pay all costs expenses and charges association or any way connected therewith.

(f) In the event that the Carrier attempts delivery of the Goods to the Merchant pursuant to the terms hereof during normal loading and the Merchant his servants agents or sub contractors or any other persons nominated to take delivery of the Goods on its behalf do take or accept delivery of the Goods the Merchant shall be liable to pay and shall pay all costs expenses and charges of any in connection or the Carrier its servants agents or sub contractors in connection or in any way associated with such attempted delivery until the accomplished.

**20. NOTICE OF CLAIM AND TIME FOR SUIT** (a) Unless notice of loss or damage and the general nature of such loss or damage is in writing to the Carrier at the Port of Discharge or Place of Delivery before or at the time of delivery of the Goods or if the loss or dam set apparent within 3 days after delivery the Goods shall be deemed to have been delivered as described in this Bill of Lading.

(b) In any event the Carrier shall be discharged from all liability in respect of non-delivery misdelivery delay loss or damage unless is brought within 1 year after delivery of the Goods or the date when the Goods should have been delivered.

**21. GOVERNING LAW AND JURISDICTION** (a) The contract evidenced by or contained in this Bill of Lading shall be governed by the State of California in the United States of America and any action or other dispute thereunder shall be brought before the Californian unless the Carrier otherwise agrees in writing.

(b) In the event that notwithstanding condition 21 (a) this contract shall be held to be subject to the laws of any other State or Court except where repugnant to the provision of that law these conditions shall continue to apply.

**22. VARIATION OF THE CONTRACT, ETC.** No servant or agent of the Carrier shall have power to waive or vary any of the terms unless such waiver or variation is in writing and authorized or ratified in writing by the Carrier.

## TERMS AND CONDITIONS OF CONTRACT

**1. DEFINITION** In this Bill of Lading the term "Vessel" means the intended Ocean Vessel on the front hereof and any vessel craft lighter or other means of conveyance by water which is or shall be substituted in whole or in part for such named ocean vessel and also includes any other vessel onto which Goods may be loaded for the purpose of being transported thereon in furtherance of the carriage covered by this Bill of Lading or any part thereof

The term "Carrier" means **POWER LINK LOGISTIC, INC.**

The term "Merchant" means the shipper consignor, consignee the holder of this Bill of Lading and/or the receiver of the owner of the Goods.

The term "Container" means any container flat pallet or other form of cargo carrying unit or equipment referred to on the face hereof or in or on which any Goods may be unitised or otherwise packed or stored when received by the Carried for carriage hereunder or subsequent to such receipt.

The terms "Place of Receipt" " intended Port of Loading" " intended Port of Discharge" and "intended Place of Delivery" means respectively the place of receipt, port of loading (Ocean Vessel), port of discharge (Ocean Vessel) and port of delivery nominated on the front hereof and

The terms " Goods" means the cargo received from the Shipper and includes any Container(s) supplied by or on behalf of any other than the carrier.

**2. CARRIER'S RESPONSIBILITY** (a) Subject to Clause 8 and 9 hereof the liability ( if any) of the Carrier in respect of the Goods during the period commencing with their being loaded onto any sea going vessel and continuing up to and during discharge from that vessel or from another sea going vessel into which the Goods shall have been transhipped shall be determined in accordance with the provisions of the Carriage of Goods by Sea Act of the United States of America approved April 16, 1936 which shall be deemed to be incorporated herein and in accordance with the terms and conditions of the Bill of Lading or other contract of carriage of the sub contractor responsible for the carriage of such Goods by sea all of which terms and conditions to the extent that they are not in conflict with the express provisions of this Bill of Lading are incorporated herein

(b)  Save as provided in (a) hereof the Carrier shall be under no liability in any capacity whatsoever for loss or misdelivery of or damage to the Goods howsoever caused whether or not through the negligence of the Carrier his servants or agents or sub contractors or for any direct or indirect loss or damage caused by delay or for any indirect or consequential loss or damage.

(c) In the event of any loss or misdelivery or delay in delivery of or damage to the Goods occurring between the time that the Goods are received by the Carrier at the Place of Receipt and the time of delivery at the intended Place of Delivery, the onus of proving that such loss misdelivery delay in delivery or damage (or any part thereof) occurred during the period specified in Clause (a) hereof shall be upon the Merchant in the event that the Merchant is unable to discharge such onus of proof the Carrier shall be under no liability for such loss, misdelivery, delay in delivery of or damage to the Goods (or any part thereof) in accordance with (b) hereof

(d)  INSURANCE WILL NOT BE ARRANGED BY THE CARRIER EXCEPT WITH THE EXPRESS INSTRUCTIONS IN WRITING OF THE CONSIGNOR AND THEN ONLY AT HIS EXPENSE AND LODGEMENT OF A DECLARATION AS TO VALUE PRIOR TO SHIPMENT.

**3. LIMITATION OF LIABILITY** Insofar as loss of or damage to or in connection with the Goods is caused during the part of the custody of carriage to which U.S. COGSA applies (1) the Carrier shall not be liable for loss or damage in an amount exceeding the

minimum allowable per package or unit (U.S. \$500) unless the value (and nature) of the Goods higher than this amount has been declared in writing by the Merchant before receipt of the Goods by the Carrier and inserted on the face of this Bill of Lading and extra freight has been paid as required if the actual value of the Goods per package or unit exceeds such declared value, the value shall nevertheless be deemed to be the declared value and the Carrier's liability, if any, shall not exceed the declared value Any partial loss or damage shall be adjusted pro rata on the basis of such declared value If the declared value has been willfully misstated or is markedly higher than actual value the Carrier shall not be liable to pay any compensation (2) if the Goods have been packed into a Container (as defined in Clause 11 ) or unitized into a similar articles of transport by or on behalf of the Merchant, it is expressly agreed that the number of such Containers or similar articles of transport shown on the face of this Bill of Lading shall be considered to be the number of packages or units for the purpose of the application of the limitation of liability provided for in this clause.

**4. CONTRACTING PARTIES** - In agreeing to and accepting the terms of this Bill of Lading the Shipper acts for himself and on behalf of each Merchant. The Shipper warrants to the Carrier that he is entitled and is duly authorized by any other person who owns or is entitled to possession of the Goods or this Bill of Lading to agree to and accept this Bill of Lading and to deliver the Goods to the Carrier on the terms hereof. Without prejudice to the foregoing each Merchant agrees that in accepting this Bill of Lading from the Carrier and also in accepting endorsement or delivery hereof from the Shipper Consignee or any other prior endorsee or holder and or delivery of the Goods he confirms, ratifies and agrees to be bound by all of the stipulations exceptions and conditions stated herein whether written printed, stamped or otherwise incorporated on the front or back hereof and that the contract contained or evidenced herein shall be fully binding between the Carrier and such Merchant in all respects.

Each Merchant agrees also that all agreements and freight arrangements previously made for the carriage of the Goods are superseded by the contract contained or evidence herein.

**5. SUB-CONTRACTING: Exemptions and immunities of Servants, Agents and Sub-Contractors** - The Carrier shall be entitled to sub contract on any terms the whole or any part of the carriage loading unloading storing warehousing handling and any and all duties whatsoever undertaken by the Carrier in relation to the Goods. The Merchant shall make no claim whatsoever in relation to the Goods against any servant agent or sub contractor of the Carrier or its servant or agents and shall further indemnity the Carrier against any claims which may be made upon the Carrier by any such servants agent or sub contractor and which arise out of any claim whether arising in negligence or otherwise in relation to the Goods against whomsoever made by the Merchant.. Without prejudice to the foregoing every such servant agent and sub contractor shall have the benefit of all provisions herein for the benefit of the Carrier as if such provisions were expressly for their benefit and in entering into this contract the Carrier to the extent of these provisions does so not only on its own behalf but also as agent and trustee for such servants, agents and sub contractors.

The Merchant authorizes the Carrier to arrange for any ocean carriage required under this Bill of Lading to be performed by any ocean carrier on the terms and conditions of the regular form of Bill of Lading in use by such ocean carrier.

**6. ROUTE OF TRANSPORT** (a) The Goods may at the Carrier's absolute discretion be carried as a single or several shipments by the Vessel and/or any other means of transport and through any route whatsoever whether or not such route is the direct advertised or customary route.

(b) Any action taken by the Carrier under this Clause or delay resulting therefrom shall

be deemed to be included within the contractual carriage and shall not be a deviation. Should the Carrier be held liable in respect of such action the Carrier shall be entitled to the full benefit of all privileges, rights and immunities contained in this Bill of Lading.

**7. CONTAINER PACKED BY CARRIER** - Where Goods received for carriage under this Bill of Lading are not already contained in or on Container(s) at the time of such receipt the Carrier shall be at liberty to carry such Goods in or on Container(s).

**8. CONTAINER PACKED BY MERCHANT** - If the Goods accepted by the Carrier is a Container(s) into which contents have been packed by or on behalf of the Merchant.

(a) the Merchant guarantees that the storage of the contents in Container(s) and the closing and sealing of the Container(s) are safe and proper and also that the Container(s) and contents thereof are suitable for handling and carriage in accordance with the terms hereof in the event of the Merchant's breach of such guarantee the Carrier shall not be responsible for any loss of or damage to or in connection with the Goods and the Merchant shall be responsible for all consequences of whatsoever kind of such breach and shall indemnity the Carrier against any loss damage expense or liability which the Carrier suffers or incurs as a consequence of such breach.

(b) the Merchant shall inspect the Container(s) when the same are furnished by or on behalf of the Carrier and they shall be deemed to have been accepted by the Merchant as being in sound and suitable condition for the purpose of the transport contracted herein unless he gives notice to the contrary in writing to the Carrier prior to packing the Container(s).

(c) if the Container(s) are delivered from the Carrier with seals intact such delivery shall be deemed as the full and complete performance of the Carrier's obligation hereunder and the Carrier shall not be liable for any loss of or damage to the contents of the Container(s).

(d) the Carrier shall be at liberty to inspect the contents of the contents of the Container(s) without notice to the Merchant at such time and place as the Carrier may deem necessary all expenses incurred in respect thereof being borne by the Merchant and in case the seals of the Container(s) are broken by the Customers of other authorities for inspection of the contents of the said Container(s) the Carrier shall not be liable for any loss damage expenses or any other consequences causing or resulting therefrom and

(e) this Bill of Lading is prima facie evidence of the receipt only of the number of Container(s) as shown on the face hereof and the order and condition of the contents and any particulars thereof are unknown to the Carrier who accepts no responsibility in respect thereof

**9. CARRIER'S CONTAINER** (a) The Merchant shall assume full responsibility for and shall indemnity the Carrier against any loss of or damage to the Carrier's Container(s) and other equipment which occurs while in the possession or control of the Merchant , his agents or sub contractors engaged by or on behalf of the Merchant.

(b) The Carrier shall in no event be liable for and the Merchant shall indemnify and hold the Carrier harmless from and against any loss of or damage to property of other persons or injuries to other persons caused by the Carrier's Container or the contents thereof during handling by or while in the possession or control of the Merchant, his agent or subcontractors engaged by or on behalf of the Merchant.

**10. RETURN OF CONTAINERS** In case Goods are delivered in Container(s) which the Carrier owns or to the possession of which the Carrier is otherwise entitled the Merchant taking delivery shall return such Container(s) promptly.

**11. DESCRIPTION AND PARTICULARS OF GODS** (a) The description and particulars of the Goods set out on the face hereof are furnished by the Merchant and are unknown to the Carrier who shall be under no responsibility whatsoever in respect of such

description and particulars                    ↓

(b) The Merchant warrants to the Carrier that the particulars relating to the Goods as set out on the front hereof and any other particulars furnished by or on behalf of the Merchant are correct and shall indemnify the Carrier against all loss damaged expenses and liability ( including taxes, penalties and fines) suffered or incurred by the Carrier as a result of the Merchant being in breach of such warranty.

**12.   FREIGHT AND CHARGES** a) The freight payable hereunder has been calculated and based on particulars of the Goods furnished by or on behalf of the Merchant. The Carrier shall be entitled at any time to reweigh remeasure or evaluate the Goods and for this purpose to open and remove and examine the contents of any Container(s) and if the particulars furnished are found to be incorrect the freight shall be adjusted accordingly and the Merchant shall also pay any expenses incurred by the Carrier in checking the said particulars.

(b) Freight shall be deemed earned on receipt of the Goods by the Carrier and shall be paid by the Merchant Goods and or conveyance lost or not lost.

(c) Except to the extent (if any) to which they may be inconsistent with any of the express term of this Bill of Lading the terms of the Carrier's applicable tariff current at the time when the Goods were received by the Carrier for carriage under this Bill of Lading are incorporated into this Bill of Lading and form part of the contract contained or evidenced herein.

**13.   LIEN** (a) The Carrier shall have a lien on the Goods which shall survive delivery for any sums whatsoever payable by or chargeable to or for the account of the Merchant under this Bill of Lading and any contract preliminary hereto and the cost and expenses of recovering same and may sell the Goods privately or by public auction without notice to the Merchant If on sale of the Goods the proceeds fail to cover the amount due and the cost and expenses incurred the Carrier shall be entitled to recover the deficit from the Merchant.

(b) If the Goods are unclaimed during a reasonable time or whenever in the Carrier's opinion the Goods will become deteriorated decayed or worthless the Carrier may at his discretion and subject to his lien and without any responsibilities attaching to him, sell, abandon or otherwise dispose of such Goods solely at the risk and expense of the Merchant.

**14.   EXPENSES** The Merchant shall be liable for and shall indemnify the Carrier and hold it harmless against all loss damage, costs, expenses and liability (including taxes, penalties and fines) of whatsoever nature suffered or incurred by the Carrier in connection with the Goods or the Container(s) because of failure by the Merchant to procure consular Department of Health or other permits or any papers that may be required at any port or place in connection with the Goods or to supply information or otherwise to comply with all laws and regulations in connection with Goods or any expenses or disbursements incurred in accordance with Paragraph 18 (a) and (b) hereof or from any other act or omission of the Merchant and also against all damages charges legal fees and other expenses which the Carrier may incur in connection with attachments seizures executions claims or legal proceedings of any description against Goods by third parties or any proceedings by way` of interpleader or otherwise which the Carrier may bring to determine the right or ownership or possession in or to the Goods or Container(s) also against any expenses or charges for regaining or attempting to regain possession of the Goods or Container(s) The Merchant authorizes the Carrier to pay and/or incur all such costs expenses and charges and to do any matters mentioned above at his expense and as his agent and engage other person to regain or seek to regain possession of Goods or·Container(s) and do all things deemed advisable for the benefit of Goods or Container(s) The Merchant and the Goods shall be jointly and

severally liable for the payment of any sums due to the Carrier hereunder by the
Merchant without in any way limiting the generality of the foregoing the Merchant shall
indemnify the Carrier in respect of any dues or duties or other charges which the Carrier
becomes legally liable to pay and pays to any governmental customs or other authority
in respect of the goods.

**15. DANGEROUS GOODS AND CONTRABAND** Goods of an inflammable explosive
radioactive corrosive damaging noxious hazardous poisonous injurious or dangerous
nature must not be tendered for carriage hereunder unless written notice of their nature
name label classification and the method of rending the said Goods innocuous with the
names and addresses of the shipper and consignee has been previously given to the
Carrier and their nature is distinctly marked on the outside of the Container(s)
package(s) or piece(s) as required by applicable statutes or regulations. The foregoing
written notice shall bear the certificate required by applicable statutes or regulations to
certify that the Goods are properly described packed and marked and in proper condition
for transportation according to the regulations prescribed by the competent authority If
any Goods tendered for carriage without previous written declaration are or at any time
become of the above mentioned nature or are or become contraband or prohibited by
any law or regulations of any port or place of loading discharge or call or any place
during transit whether the Merchant is aware thereof or not such Goods upon discovery
at any time may be rendered innocuous thrown overboard or discharge at any port or
place or be otherwise disposed of at Carrier's or sub contractors discretion without any
liability attaching thereto and without prejudice to the Carrier's right to freight and any
other charges payable hereunder The foregoing provisions shall also apply to any such
Goods tendered for carriage with such previous declaration which in the opinion of the
Carrier or his sub contractor have or are likely to become dangerous to the Carrier
Vessel Cargo or other property or person The Merchant shall be liable to indemnify the
Carrier against all loss, damage, expenses and liabilities (including taxes, penalties and
fines) suffered or incurred by the Carrier as a result of the carriage of such Goods The
Carrier reserves the right but shall have no obligation to strip Container(s) packed by or
on behalf of the Merchant and examine the contents thereof and arrange for restowage
recooperage or reconditioning at the Carrier's or the sub contractor's discretion but at
the Merchant's risk and expense.

**16.   SPECIAL CONTAINER** (a) The Carrier does not undertake to carry the Goods in
refrigerated heated insulated ventilated or any other special Container(s) nor to carry
special Container(s) packed by or on behalf of the Merchant as such but the Carrier will
treat such Goods or Container(s) only as ordinary goods or dry Container(s) respectively
unless special arrangements for the carriage of such Goods or Container(s) have been
agreed to in writing between the Carrier and the Merchant and unless such special
arrangements are noted on the face of this Bill of Lading and unless special freight as
required has been paid The Carrier does not accept responsibility for the proper
functioning of Special Container(s) supplied by or on behalf of the Merchant.
(b) As regards the Goods which have been agreed to be carried in special Container(s)
the Carrier shall exercise due diligence to maintain the facilities of the special
Container(s) while they are in his actual custody and control but shall not be liable for
any loss or damage to the Goods caused by latent defects derangement or breakdown
of facilities of the Container(s).
(c) If the Goods have been packed into refrigerated Container(s) by the Carrier and the
particular temperature range requested by the Merchant is inserted in this Bill of Lading
the Carrier will set the thermostatic controls within the requested temperature range but
does not guarantee the maintenance of such temperature inside the Container(s).
(d) If the Goods have been received by the Carrier in Container(s) which have been

packed by or on behalf of the Merchant it is the obligation of the Merchant to stow the contents properly and set the thermostatic controls exactly The Carrier shall not be liable for any loss of or damage to the Goods arising out of or resulting from the Merchant's failure in such obligation and further does not guarantee the maintenance of the intended temperature inside the Container(s).

**17.   DECK CARGO**   The Carrier has the right to carry Goods under deck or on deck on any vessel.

**18.   TRANSHIPMENT AND FORWARDING** (a) Whether arranged beforehand or not the Carrier shall be at liberty without notice to perform the contract of carriage evidenced herby wholly or partly by the named or any other vessel(s) or craft or by any vehicle aircraft or other means of transport by water land or all whether owned or operated by the Carrier or others The Carrier may under any circumstances whatsoever discharge the Goods or any part thereof at any port or place for transhipment and store the same afloat or ashore and then forward the same by any means of transport

(b) In case the Goods hereby specified cannot be found at the port of discharge or the Place of Delivery or if they be miscarried then when found may be forwarded to their intended port of discharge or Place of Delivery at the Carrier's expense but the Carrier shall not be liable for any loss damage delay or depreciation arising from such forwarding.

**19.   DELIVERY** (a) The Carrier shall have the right to deliver the Goods at any time from or at the Vessel's side custom house warehouse wharf quay or any other place designated by the Carrier within the geographic limits of the intended Port of Discharge or the intended Place of Delivery shown on the face hereof.

(b) In any case the Carrie's responsibility shall cease when the Goods have been delivered to the Merchant his servants agents or subcontractors or any other person entitled to receive the Goods on his behalf at the place designated by the Carrier Delivery of the Goods to the custody of customs or other authorities shall constitute final discharge of the Carrier's responsibility hereunder. (c) In case the Goods received by the Carrier are Container(s) into which have been packed by or on behalf of the Merchant the Carrier shall only be responsible for delivery of the total number of Container(s) and deliver the contents thereof in accordance with brands marks numbers sizes or types of packages or pieces.

(d) In case the Goods have been packed into Container(s) by the Carrier the Carrier shall unpack the Container(s) and deliver the contents thereof and shall not b e required to deliver the goods in container(s).

(e) In the event that the Carrier delivers or places the Goods into ay customs house bond store or any other places as is prescribed in part (a) hereof or as prescribed in Clause 18 (a) hereof the Merchant shall be liable to pay and shall pay all costs expenses and charges associated or in any way connected therewith.

(f) In the event that the Carrier attempts delivery of the Goods to the Merchant pursuant to the terms hereof during normal trading hours and the Merchant his servants agents or sub contractors or any other persons nominated to take delivery of the Goods on his behalf does not take or accept delivery of the Goods the Merchant shall be liable to pay and shall pay all costs expenses and charges suffered or incurred by the Carrier his servants agents or sub contractors in connection or in any way associated with such attempted delivery until delivery is accomplished.

**20.   NOTICE OF CLAIM AND TIME FOR SUIT** (a) Unless notice of loss or damage and the general nature of such loss or damage be given in writing to the Carrier at the Port of Discharge or Place of Delivery before or at the time of delivery of the Goods or if the loss or damage be not apparent within 3 days after delivery the Goods shall be deemed to have been delivered as described in this Bill of Lading.

b) In any event the Carrier shall be discharged from all liability in respect of non-delivery misdelivery delay loss or damage unless suit is brought within 1 year after delivery of the Goods or the date when the Goods should have been delivered. .

**21.   GOVERNING LAW AND JURISDICTION** (a) The contract evidence by or contained in this Bill of Lading shall be gover ned by the law of the State of California in the United States of America and any action or other dispute thereunder shall be brought before the Californian Courts unless the Carrier otherwise agrees in writing.
(b) In the event that notwithstanding condition 21 (a) this contract shall be held to be subject to the laws of any other State or County than except where repugnant to the provision of that law these conditions shall continue to apply

**22.   VARIATION OF THE CONTRACT, ETC** No servant or agent of the Carrier shall have power to waive or vary any of the terms hereof unless such waiver or variation is in writing and authorized or ratified in writing by the Carrier.

# EXHIBIT E

# POWER LINK LOGISTICS' MOTION FOR SUMMARY JUDGMENT DISMISSING THE COMPLAINT ON THE BASIS OF *FORUM NON CONVIENENS*

Safmarine

**NON-NEGOTIABLE WAYBILL**

Waybill No.
SAFM
750336194

Shipper
ZA TRANS LOGISTICS
2ND FLOOR
67 OLD FORT RD
DURBAN

Booking No.
750336194

Export references
DSX3538

Consignee
POWER LINK LOGISTICS INC
21112 FIGEROA STREET SUITE A
MAIN TEL: 310-782-1111
FAX: 310-787 2500

This non-negotiable Waybill, which is issued instead of a Bill of Lading at the Merchant's request, is not a document of title to the Goods. Otherwise the contract evidenced by this Waybill is deemed to be a contract as defined in Article 1(b) of the Hague Rules. Carrier to exercise due care ensuring that delivery is made to the Consignee or his authorised representative. However, the Carrier shall not be liable for misdelivery, unless caused by the Carrier's negligence. In accepting this waybill, and/or taking delivery of the Goods and notwithstanding the non-signing of this waybill by the Merchant, the Merchant expressly accepts and agrees to all terms, conditions and exceptions of the Carrier's non-negotiable Waybill, (printed or not on the reverse of this document at Merchant's option and available from the Carrier or its agents and at Carrier's website indicated in the signature box below), as well as those printed, stamped or otherwise incorporated in this Waybill.

Notify Party
SAME AS ABOVE
MAIN TEL: 310-782-1111
FAX: 310-787 2500
ATT: POLLY YANG

Onward inland routing ( For account and risk of Merchant)

Place of Receipt. Applicable only when document used as Multimodal Waybill

Vessel
MSC CHINA

Voyage No.
N350

Place of Delivery. Applicable only when document used as Multimodal Waybill

Port of Loading
Durban

Port of Discharge
Newark

**PARTICULARS FURNISHED BY SHIPPER - CARRIER NOT RESPONSIBLE**

| Kind of packages; description of goods; Marks and Numbers; Container No./Seal No. | Gross Weight | Measurement |
|---|---|---|
| 2 containers said to contain 1660 CARTONS | 19557.680 KGS | 107.8850 CBM |
| WOVEN GARMENTS | | |
| TEXU4748216  ML-ZA0947843  40 DRY 8 ... 755 CARTONS  9711.2 ... KGS ...3.5866 CBM | | |
| KNLU4309468  ML-ZA0947842  40 DRY 8 ... CARTONS  9846.4 ... KGS ...53.2995 CBM | | |
| SHIPPER'S LOAD, STOW, WEIGHT AND COUNT | | |
| CY/CY | | |
| FREIGHT COLLECT | | |
| Forwarder Ref: DSX3538 | | |

Above particulars as declared by Shipper, but without responsibility of or representation by Carrier.

| Freight & Charges | Rate | Unit | Currency | Prepaid | Collect |
|---|---|---|---|---|---|
| | | | | | |

| Carrier's Receipt Total number of containers or packages received by Carrier. | Place of Issue of Waybill | |
|---|---|---|
| 2 container(s) | | Shipped, as far as ascertained by reasonable means of checking, in apparent good order and condition unless otherwise stated herein the total number or quantity of Containers or other packages or units indicated in the box opposite entitled "Carrier's Receipt." |
| Shipped on Board Date | Date of Issue of Waybill | |
| Declared Value Charges (see clause 7.3 of Carrier's Waybill or Bill of Lading) for Declared Value of US$ | | |

Signed by the Carrier Safmarine Container Lines N.V.
www.safmarine.com

## Sea Way Bill

Non-negotiable Waybill
1. Definitions
2. Carrier's Tariff
3. Warranty
4. Sub-contracting
5. Carrier's responsibility : Port-to-port shipment
6. Carrier's responsibility - Multimodal Transport
7. Compensation and Liability Provisions
8. General
9. Notice of Loss, Time Bar
10. Defences and limits for the Carrier
11. Shipper-packed containers
12. Perishable Cargo
13. Inspection of Goods
14. Description of Goods
15. Merchant's responsibility
16. Freight, Expenses and Fees
17. Lien
18. Optional stowage, Deck cargo and Livestock
19. Methods and Routes of Carriage
20. Matters affecting performance
21. Dangerous Goods
22. Notification, Discharge and Delivery
23. Both-to-Blame Collision Clause
24. General Average and Salvage
25. Variation of the Contract and Validity
26. Law and Jurisdiction

**HOME**

SAFMARINE CONTAINER LINES n.v.
De Gerlachekaai 20 - B-2000 Antwerpen
HR Antwerpen 226.171 - BTW BE 421.619.408
VGVC nr. 0326.001

This non-negotiable Waybill, which is issued instead of a Bill of Lading at the Merchant's request, is not a document of title to the Goods. Otherwise the contract evidenced by this Waybill is deemed to be a contract as defined in Article 1(b) of the Hague Rules. Carrier to exercise due care ensuring that delivery is made to the Consignee or his authorised representative. However, the Carrier shall not be liable for misdelivery, unless caused by the Carrier's negligence. In accepting this Waybill, and/or taking delivery of the Goods and notwithstanding the non-signing of this Waybill by the Merchant, the Merchant expressly accepts and agrees to all terms, conditions and exceptions of the Carrier's non-negotiable Waybill, (printed or not on the reverse of this document at Merchant's option and available from the Carrier or its agents and at Carrier's website indicated in the signature box below), as well as those printed, stamped or otherwise incorporated in this Waybill.

# 1. DEFINITIONS

**"Transport Document" or "TD"** means this document, which evidences the contract of carriage governing the Carriage and which can either be a bill of lading or a non-negotiable waybill as determined on the reverse hereof.

**"Bill of Lading"** means this Transport Document if named bill of lading on the reverse hereof.

**"Carriage"** means the whole or any part of the carriage, loading, unloading, handling and any and all other services whatsoever undertaken by the Carrier in relation to the Goods.

**"Carrier"** means Safmarine Container Lines n.v., De Gerlachekaai 20, 2000 Antwerp, Belgium, BTW BE 0421.619.408 RPR Antwerp and VGVC n° 0326.001.

**"Container"** includes any container (including an open top container), flat rack, platform, trailer, transportable tank, pallet or any other similar article used to consolidate the Goods and any connected equipment.

**"Freight"** includes all charges payable to the Carrier in accordance with the applicable Tariff and this TD.

**"Goods"** means the whole or any part of the cargo and any packaging accepted from the Shipper and includes any Container not supplied by or on behalf of the Carrier.

**"Hague Rules"** means the provisions of the International Convention for the Unification of Certain Rules relating to bills of lading signed at Brussels on 25th August 1924.

**"Holder"** means any Person rightfully in possession of this Bill of Lading or the named Consignee in the event the Bill of Lading is non-negotiable.

**"Merchant"** includes the Shipper, Holder, Consignee, Receiver of the Goods, any Person owning or entitled to the possession of the Goods or of this Bill of Lading (when the TD is a Bill of Lading) and anyone acting on behalf of such Person.

**"Multimodal Transport"** arises if the Place of Receipt and/or the Place of Delivery are indicated on the reverse hereof in the relevant boxes.

**"Package"** where a Container is loaded with more than one package or unit, the packages or other shipping units enumerated on the reverse hereof as packed in such Container and entered in the box on the reverse hereof entitled **"Carrier's Receipt"** are each deemed a Package.

**"Person"** includes an individual, corporation, or other legal entity.

**"Port-to-Port"** arises if the Carriage is not Multimodal Transport.

**"Sub-Contractor"** includes owners, charterers and operators of vessels (other than the Carrier), stevedores, longshoremen, lighterers, terminal and groupage operators, road and rail transport operators, warehousemen, customs inspection stations, port authorities, pilots and any independent contractors employed by the Carrier performing the Carriage and any direct or indirect sub-contractors, servants and agents thereof whether in direct contractual privity or not.

**"Terms and Conditions"** means all terms, rights, defences, provisions, conditions, exceptions, limitations and liberties of this TD.

**"US COGSA"** means the US Carriage of Goods by Sea Act 1936.

**"Vessel"** means any water borne craft used in the Carriage under this TD which may be a feeder vessel or an ocean vessel.

## 26. LAW AND JURISDICTION

Any claim or dispute arising under this TD, including third party proceedings or those involving several defendants, shall exclusively be governed by the law and exclusively be determined by the courts of the place where the Carrier has his registered office (to the exclusion of the jurisdiction of the courts of any other place) or, at the Carrier's option if the defendant is not the Carrier, by the courts and according to the law of that place where the defendant has his registered office, but only to the extent that anything else has not been dealt with by the provisions of this TD.

# EXHIBIT F

# POWER LINK LOGISTICS' MOTION FOR SUMMARY JUDGMENT DISMISSING THE COMPLAINT ON THE BASIS OF *FORUM NON CONVIENENS*

06/28/07 19:49:45                    ->Power Link Logistic  MCSFAX  14934    Page 001

POWER LINK LOGISTICS INC

| | **ARRIVAL NOTICE** | B/L No. 750336194 |
|---|---|---|

| Notify Party (complete name and address) | Vessel MSC CHINA | Voy No. N350 | Date JUN 28 07 |
|---|---|---|---|

POWER LINK LOGISTICS INC
21112 FIGUEROA ST
CARSON CA 90745

| Your ref. | Page 1 |
|---|---|

| Place of Receipt DURBAN | Other numbering identification |
|---|---|

Port of Loading
DURBAN

Port of Discharge
NEWARK, NJ

Port of Delivery
NEWARK, NJ

FOR IT DATE
USE ARRIVAL
DATE BELOW

| Consignee (complete name and address) | Shipper/Exporter (complete name and address) |
|---|---|
| POWER LINK LOGISTICS INC | ZA TRANS LOGISTICS |
| 21112 FIGEROA STREET SUITE A | 2ND FLOOR |
| CARSON, CA 90745 USA | 67 OLD FORT RD |
| MAIN TEL: 310-782-1111 | DURBAN SOUTH AFRICA |
| FAX: 310-787 2500 USA | |

| Container No/Seal No. Marks and Numbers | No. of Containers or pkgs. | Kind of Packages; description of goods | Gross Weight | Measurement |
|---|---|---|---|---|
| KNLU4309468 | 2 | CY / CY | | CBM |
| ML-ZA0947842 | | X40' | 19557 KGS | 107.685 |
| 9846 KGS | | 1660 CARTONS | | CFT |
| TEXU4748216 | | WOVEN GARMENTS | 43115 LBS | 3802.839 |
| ML-ZA0947843 | | SC NO: 65566 | | |
| 9711 KGS | | | | |

**************************************************************************************
FOR STORE DOOR DELIVERIES, PLEASE FAX DELIVERY ORDERS TO 1-8883990373
OR EMAIL NAMSCLDOR@AMERICA.SAFMARINE.COM.
CALL SAFVOICE AT 1-8664724723 FOR UP-TO-DATE INFO ON
*FREIGHT CHARGES * VESSEL ETA * FINAL DELIVERY * RELEASE STATUS * OR VISIT
OUR WEBSITE AT WWW.SAFMARINE.COM FOR TRACKING & SCHEDULES

| Freight & Charges | | Unit | Prepaid | Collect |
|---|---|---|---|---|
| BASIC FREIGHT  2.00* | 2650.00 USD | 40' | | 5300.00 |
| CARRIER SECURITY CHA | 6.00 USD | S4 | | 12.00 |
| PORT SECURITY CHARGE | 5.00 USD | S4 | | 10.00 |
| DEST HANDLING CHARGE | 600.00 USD | S4 | | 1200.00 |
| CHASSIS USAGE CHARGE | 60.00 USD | S4 | | 120.00 |
| BUNKER ADJUST FACTOR | 880.00 USD | S4 | | 1760.00 |

EXPRESS MAIL PACKAGES    |  U.S. MAIL PACKAGES

REMIT TO: SAFMARINE C/O MAERSK INC., ATTN: PAYMENT SERVICES
6000 CARNEGIE BLVD.,    |  P.O. BOX 12971
CHARLOTTE, NC  28209    |  CHARLOTTE, NC
PHONE 1-8668664723      |  28220

| Total amount due USD | 8402.00 |
|---|---|

TO PREVENT DEMURRAGE ON DOOR DELIVERY, WE MUST RECEIVE
DELIVERY ORDER, DOCUMENTS, FREIGHT, & CUSTOMS RELEASE
BY NOON OF BUSINESS DAY PRIOR TO FREETIME EXPIRATION.

The above mentioned cargo is due to arrive aboard subject vessel On/or about — Date JUL 04 07
and is expected to be available for delivery on — Date EST.AVA.TIME
Estimated Demurrage start — Date

# EXHIBIT G

# POWER LINK LOGISTICS' MOTION FOR SUMMARY JUDGMENT DISMISSING THE COMPLAINT ON THE BASIS OF *FORUM NON CONVIENENS*

# POWER LINK LOGISTIC INC.

21112 Figueroa Street, Suite A, Carson, CA 90745-1938
Tel: 310-782-1111    Fax: 310-787-2500

Page    1    Of    1

Date:    07/04/2007

INVOICE:0048153
Due Upon Receipt

| MBL / MAWB Number | ETA | Bill To |
|---|---|---|
| SAFM750336194 | 07/04/2007 | A/C:323005429<br>MARAN INC.,<br>4301-4315 TONNELLE AVENUE<br>NORTH BERGEN, NJ 07047 |

| HBL / HAWB Number | ORIGIN / DESTINATION | |
|---|---|---|
| 750336194001 | DURBAN<br>NEW YORK, NY | |

| Charges Items | Amount (USD) |
|---|---|
| Ocean Freight Charges-2x40H | $7340.00 |
| Bunker Adjustment Factor | $1840.00 |
| Handling Charges | $50.00 |
| CUSTOMS AMS CHARGE | $25.00 |
| Customs Entry Fee | $125.00 |
| | |
| TOTAL : | ***$9380.00*** |

## Shipment Details

File Number      :1s10014934
House Bill       :750336194001
Master Bill      :SAFM750336194
Carrier          :SAFMARINE
Vessel Info      :MSC CHINA/N350

Ctry of Origin   :SOUTH AFRICA          Loading Port   :DURBAN
Discharge Port   :NEW YORK, NY          Eta            :07/04/2007
Final Dest.      :NEW YORK, NY          Final Eta      :07/04/2007
Weight           :19557.68 KGS          Pcs Count      :1660 CARTONS
CBM              :107.6850
Shipper          :GLOBAL GARMENTS COMPANY PTY LTD
Consignee        :MARAN INC.,

Goods Description :GARMENTS
Container : KNLU4309468,TEXU4748216
Purchase Order : 9308-73/74/Qty=0

Prepared By:
Printed Date:

MARI

**MARAN, INC.** 4301 TONNELLE AVE., NORTH BERGEN, NJ 07047

115398

| POWER LINK LOGISTIC INC | INVOICE NUMBER | DATE | AMOUNT | DISCOUNT | NET AMOUNT |
|---|---|---|---|---|---|
| 21112 FIGUEROA STREET STE. A | 0048540 | 5/27/07 | 286.00 | | 286.00 |
| CARSON, CA 90745 | 0048153 | 7/4/07 | 9,380.00 | | 9,380.00 |
| | 0048151 | 7/4/07 | 9,180.00 | | 9,180.00 |
| | 0048144 | 7/4/07 | 8,916.10 | | 8,916.10 |
| **DATE** | 0048157 | 7/4/07 | 797.92 | | 797.92 |
| 8/1/07 | 0048155 | 7/4/07 | 13,895.00 | | 13,895.00 |
| **CHECK NUMBER** | 0048370 | 7/4/07 | 6,535.59 | | 6,535.59 |
| 115398 | 0048345 | 7/4/07 | 490.00 | | 490.00 |
| | 0048353 | 7/4/07 | 196.00 | | 196.00 |
| | 0048163 | 7/8/07 | 8,560.00 | | 8,560.00 |

TOTAL = $58,236.61

**MARAN, INC.**
4301 TONNELLE AVE.
NORTH BERGEN, NEW JERSEY 07047

BANK OF AMERICA
NEW JERSEY
55-33/212

115398

PAY   Fifty-Eight Thousand Two Hundred Thirty-Six and 61/100 Dollars

VOID AFTER 90 DAYS

TO THE
ORDER
OF   **POWER LINK LOGISTIC INC**
21112 FIGUEROA STREET STE. A
CARSON, CA 90745

DATE
Aug 1, 2007

AMOUNT
$58,236.61