UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

FEDERAL INSURANCE COMPANY and                    ECF CASE
MARAN, INC.

                                                 08 Civ. 1806 (SHS)(HP)

                        Plaintiffs,

        -against-                                **MEMORANDUM OF
                                                 LAW IN OPPOSITION
M/V MSC CHINA her engines, boilers, tackle, etc. TO DEFENDANT
POWER LINK LOGISTICS INC.                        POWER LINK
SAFMARINE CONTAINER LINES N.V.                   LOGISTICS' MOTION
                                                 TO DISMISS FOR
                        Defendants.              *FORUM NON
-------------------------------------------------------------------X      CONVENIENS*

                        Preliminary Statement

        Defendant Power Link Logistics fails to accord plaintiffs the great deference due

these U.S. plaintiffs' choice of their own home forum to maintain this maritime COGSA[1]

action for loss of goods shipped to the Port of New York, where the loss was

discovered, investigated, and paid by plaintiff, Federal Insurance Company, to the

plaintiff assured, Maran, Inc.  Gross v. British Broadcasting Corp., 386 F.3d 224, 230-1

(2d Cir. 2004).

        A three step analysis is required before considering dismissal of this maritime

case on the grounds of *forum non conveniens,* which plaintiffs' contend would be

contrary to the interests of justice and to the convenience of the parties and witnesses.

The seminal case in the Second Circuit on *forum non conveniens* is Iragorri v. United

---

        [1] The U.S. Carriage of Goods by Sea Act, 46 U.S.C. §30701, historical and
statutory notes, formerly 46 U.S.C.App. §1300 et seq.

Technologies Corp., 243 F.3d 678 (2d Cir. 2001), *rehearing en banc*, 274 F.3d 65 (2d Cir. 2001), where the Court set forth the analysis required in assessing the great deference accorded the plaintiffs' choice of their home forum.

First, the Court must apply a presumption in favor of plaintiffs' choice of forum, and then must determine if an adequate alternate foreign forum exists.  Only then, does the Court apply the private interests and public interest factors as set forth in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-9 (1947), to decide if plaintiffs' chosen forum is so oppressive and vexatious to the defendants that the plaintiffs' chosen forum is inappropriate.  Iragorri, *Id.*, 243 F.3d at 680; Piper Aircraft v. Reyno, 454 U.S. 235, 241 (1981); Gross v. British Broadcasting Corp., *Id.*

Inherently, a *forum non conveniens*' analysis is fact specific, highly discretionary with the Court, and should rarely be granted except on a strong showing that the chosen forum is inappropriate.  DiRenzo v. Philip Services Corp., 232 F.3d 49, 57 (2d Cir. 2000), *petition for rehearing granted*, 294 F.3d 21, 27 (2d Cir. 2002).

Forum shopping by either plaintiff or defendant is to be discouraged, and the en banc decision of the Second Circuit in Iragorri, discusses in detail the degree of deference accorded to the plaintiff's choice of forum.  Here, the facts and plaintiffs' choice of forum in New York dictate that the Southern District of New York is the most appropriate forum for resolution of this maritime cargo claim.

<u>Argument</u>

POINT I:    GREAT DEFERENCE SHOULD BE ACCORDED
THE U.S. BASED PLAINTIFFS' CHOICE OF FORUM
IN NEW YORK WHICH WAS THE PORT OF
DESTINATION WHERE THE LOSS WAS
DISCOVERED AND INVESTIGATED

Several valid reasons exist for plaintiffs' selection of the Southern District of New

York as the forum to adjudicate their rights against defendants ocean carriers in this

maritime COGSA cargo claim for non-delivery.

First, the Port of New York was the place of delivery of container no.

TEXU4748216 to Maran, Inc. under COGSA and the Harter Act, *Id.*  Although Maher

Terminals is in Port Newark-Elizabeth Marine Terminal, the Power Link Bill of Lading

shows the "Place of Delivery" to be New York.   The Power Link Bill of Lading was the

document negotiated by consignee, Citibank NA New York USA, to Maran, Inc., under

the Letter of Credit referred to on the backside of the Power Link Bill of Lading.  (Exh.

1)

Second, both plaintiffs conduct business in New York as authorized by the New

York Business Corporation and Insurance Laws with places of business at 1407

Broadway for Maran, Inc., and 55 Water Street for Federal Insurance Company.

Third, the key party and non-party witnesses who received the container in the

Port of New York, discovered the loss, investigated the loss, and handled the claim are

within 100 miles of the Courthouse, and thus subject to the compulsory process of this

Court.  Rule 45(b)(2), F.R.Civ.P.  Furthermore, the Safmarine claims specialist, Mr.

William Bender, who handled this claim is in Madison, NJ, only approximately 30 miles from the Courthouse.

Fourth, the documents related to plaintiffs' claim are either already in New York, within the subpoena power of this Court, or can be easily delivered to New York either electronically or to one of New York's three metropolitan international airports.

Thus, legitimate and valid reasons exist for selecting plaintiffs' home forum in New York to maintain this COGSA action.

> "The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice. Stated differently, the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*." Iragorri, *Id.* 274 F.3d at 71-2.

The fact that Maran, Inc.'s warehouse is located in New Jersey does not diminish the deference accorded plaintiffs' choice of New York as the forum for adjudication of this maritime claim under COGSA and the Harter Act.

> "In many circumstances, it will be far more convenient for a U.S. resident plaintiff to sue in a U.S. court than in a foreign country, even though it is not the district in which the plaintiff resides. It is not a correct understanding of the rule to accord deference only when the suit is brought in the plaintiff's home district. Rather, the court must consider a plaintiff's likely motivations in light of all the relevant indications." Iragorri, *Id.* 274 F.3d at 73.

This is not a case of forum shopping by the plaintiff. Rather, it is defendant

Power Link who is forum shopping by waiving its own forum selection clause no. 21 in the Bill of Lading (Exh. 1), and attempting to have this case dismissed in order to relegate plaintiff to the Courts of South Africa, not for any convenience of the witnesses to the loss, but solely to time bar the case and/or chill plaintiff from pursuing its claim for non-delivery of the contents of container no. TEXU4748216.

> "Courts should be mindful that, just as plaintiffs sometimes choose a forum for forum-shopping reasons, defendants also may move for dismissal under the doctrine of *forum non conveniens* not because of genuine concern with convenience but because of similar forum-shopping reasons.  District courts should therefore arm themselves with an appropriate degree of skepticism in assessing whether the defendant has demonstrated genuine inconvenience and a clear preferability of the foreign forum.  And the greater degree to which the plaintiff has chosen a forum where the defendant's witnesses and evidence are to be found, the harder it should be for the defendant to demonstrate inconvenience." Iragorri, *Id.* 274 F.3d at 75.

In reversing a dismissal on *forum non conveniens* grounds in, Gross v. British Broadcasting Corp., *Id.*, the Second Circuit stressed the very great deference given to a U.S. plaintiff suing in her own home forum where the defendant was amenable to process, quite parallel to what plaintiffs have done in this case.

> "Nothing in our sliding scale approach calls into question the very strong deference traditionally given a U.S. plaintiff suing in her home forum. Importantly, the district court did not mention anything to suggest that appellant chose the forum for illegitimate reasons, nor do we find such evidence in the record.  This case therefore presents a situation in which courts should initially be at their most deferential:  a U.S. plaintiff suing at home for valid reasons."  *Id.* at 231.

POINT II:    DEFENDANT SPECULATES THAT THE LOSS OCCURRED
AT THE LOADPORT IN SOUTH AFRICA AND THAT
SOUTH AFRICAN LAW APPLIES RENDERING SOUTH
AFRICA AN ADEQUATE ALTERNATE FORUM, BUT U.S.
COGSA AND THE HARTER ACT ARE APPLICABLE TO
THIS LOSS AND DEFENDANT IS LIABLE UNDER U.S.
LAW

It is defendant's threshold burden to establish that an alternate adequate foreign

forum exists for the adjudication of plaintiffs' claim.  Wiwa v. Royal Dutch Petroleum,

226 F.3d 88 (2d Cir. 2000).

> "The defendant has the burden to establish that an adequate alternative
> forum exists and then to show that the pertinent factors 'tilt strongly in
> favor of trial in the foreign forum.'" *Id.* at  100.

Defendant mistakenly contends that the Courts of  South Africa are best suited to

adjudicate this claim for non-delivery because South African laws may apply to a

presumed loss before loading onto the ocean carrying vessel due to the changed seal

number on container no. TEXU4748216. (Defendant Power Link's Memorandum of Law

in Support, Point II)

However, U.S. COGSA applies *ex proprio vigore* to this shipment, and defendant

is liable under its own Bill of Lading terms, and under defendant Safmarine's Waybill

terms as incorporated therein.  The Terms and Conditions of Power Link's Bill of

Lading are attached to the Lan Hoang Declaration in Support as Exhibit D thereto.

Under clause 2, Carrier's Responsibility, not only is U.S. COGSA specifically

incorporated, but the clause reads in pertinent part that:

> " . . . the liability (if any) of the Carrier . . . shall be deemed . . . in

6

accordance with the terms and conditions of the Bill of Lading or other contract of carriage of the sub contractor responsible for the carriage of such Goods by sea all of which terms and conditions . . . are incorporated herein . . .”

Furthermore, under clause 5, Sub-contracting, the Power Link Bill of Lading

states in pertinent part:

“The Merchant authorizes the Carrier to arrange for any ocean carriage required under this Bill of Lading to be performed by any ocean carrier on the terms and conditions of the regular form of Bill of Lading in use by such ocean carrier.”

Thus, the Safmarine Waybill terms are incorporated by reference into Power

Link’s Bill of Lading, and clause 5, Carrier’s Responsibility : Port to Port Shipment, of

the Safmarine Waybill states in pertinent part:

“5.3   Where US COGSA governs the Carriage, as a matter of compulsory law, then the provisions stated in the said Act shall apply before loading on the Vessel or after discharge therefrom, as the case may be, during Carriage to or from a container yard or container freight station in or immediately adjacent to the sea terminal at the Port of Loading and/or Discharge.”

As stated by the Second Circuit in Allied Chemical v. Companhia de Navegacao

775 F.2d 476, 482  (2d Cir. 1985) *cert. denied*, 475 U.S. 1099 (1986), bill of lading terms are

strictly construed against the carrier:

“Our analysis begins with the bill of lading, the document evidencing the contract of carriage.  *David Crystal*, 339 F.2d at 297.  We bear in mind that bills of lading are contracts of adhesion and, as such, are strictly construed against the carrier.”

It is thus manifestly clear that the pre-loading period at the container yard in

7

Durban, when defendant contends the loss occurred due to the changed seal number on container no. TEXU4748216, is governed by U.S. COGSA by contractual extension in the Bill of Lading and Waybill terms and conditions which are to be strictly construed against the carriers.

Furthermore, the Harter Act, 46 U.S.C. §30701, historical and statutory notes, formerly at 46 U.S.C. §190, which imposes a duty on the ocean carrier, "in proper loading, stowage, custody, care, [and] proper delivery," also applies to the preloading period of responsibility.  See, Uncle Ben's, Inc. v. Hapag-Lloyd Akt., 855 F.2d 215, 217 (5th Cir. 1988), holding that:

> "If the parties extend the provisions of COGSA to the preloading phase, any inconsistency with the Harter Act must yield to the Harter Act."

Therefore, South African law is not implicated in plaintiffs' claim against defendant Power Link, and no reason on that basis exists to deprive plaintiffs of their chosen forum in New York.


POINT III:     TIME BAR OF THIS CLAIM AFTER JULY 9, 2008, WOULD
               RENDER THE SOUTH AFRICAN FORUM INADEQUATE

As defendant Power Link points out in its Memorandum of Law in Support, Point II, page 6, an alternate foreign forum has been held to be inadequate where the claim would be time-barred, citing Norex Petroleum Ltd. v. Access Industries, 416 F.3d 146 (2d Cir. 2005).  The Court in Norex stated, in reversing the district court's dismissal

on *forum non conveniens* grounds:

> "We clarify here that a case cannot be dismissed on grounds of *forum non conveniens* unless there is presently available to the plaintiff an alternate forum that will permit it to litigate the subject matter of its dispute." *Id.* at 159.

Specifically, the Court in <u>Norex</u>, reaffirmed its ruling in <u>Bank of Credit & Commerce Int'l (Overseas) Ltd. v. Bank of Pakistan</u>, 273 F.3d 241, 246 (2d Cir. 2001), quoting:

> "For precisely this reason, in addressing a different *forum non conveniens* challenge, we ruled that, 'an adequate forum does not exist if a statute of limitations bars the bringing of [a] case' in a foreign forum that would be timely in the United States." *Id.* at 159.

It is unlikely that this motion will be determined in sufficient time before July 9, 2008, the one year anniversary of delivery of the subject shipment, to avoid time bar of this claim if commenced, again, in a South African court. Certainly, defendant Power Link has not offered to waive the time bar defense, and this Court may not wish to impose such a condition if it decides to dismiss for *forum non conveniens.*

Thus, the South African alternate forum is inadequate and defendant has not carried its burden of proof.

POINT IV:    DEFENDANT IS ESTOPPED FROM ASSERTING THE
             POWER LINK FORUM SELECTION CLAUSE NO. 21 IN
             ITS BILL OF LADING

Whether this claim remains in this Court as plaintiffs urge, or the Court dismisses in its discretion on grounds of *forum non conveniens*, defendant Power Link may still attempt to defeat plaintiffs claim by subsequently relying upon the Law and Jurisdiction Clause 21 of its Bill of Lading, which provides as follows.

> "GOVERNING LAW AND JURISDICTION (a) The contract evidence by or contained in this Bill of Lading shall be governed by the law of the State of California in the United States of America and any action or other dispute thereunder shall be brought before the California courts unless the Carrier otherwise agrees in writing.  (b) In the event that notwithstanding condition 21(a) this contract shall be held to be subject to the laws of any other State or County than except where repugnant to the provision of that law these conditions shall continue to apply."  See, Exhibit D to Lan Hoang Declaration in Support.

Plaintiff questions the validity of this clause as it erroneously invokes the state law of California, in contradiction to U.S. COGSA and Bill of Lading clauses nos. 2 and 5, and relegates plaintiffs to the state courts of California which have no connection to plaintiffs or this claim.

Plaintiffs demand that this Court order defendant Power Link estopped from later raising Clause 21 in an attempt to dismiss this claim, in this Court or elsewhere, after having brought this motion solely on the grounds of *forum non conveniens* with the time bar date of July 9, 2008, rapidly approaching.

10

POINT V:            THE PRIVATE AND PUBLIC INTEREST FACTORS
                    IN THIS CASE DO NOT OVERCOME THE STRONG
                    DEFERENCE GIVEN TO PLAINTIFF'S CHOICE OF
                    FORUM IN NEW YORK

Balancing the private and public interest factors against the presumption in favor

of plaintiffs' choice of forum is the third and final step in a *forum non conveniens*

analysis, provided an adequate alternate forum is found to exist.  Gross v. British

Broadcasting Corp., *Id.* at 230; Norex Petroleum Ltd. v. Access Industries, *Id.* at 160.

A.    **Private Interest Factors:**

"As enumerated in *Gilbert*, the private interest factors include

relative ease of access to sources of proof; availability of compulsory
process for attendance of unwilling, and the cost of obtaining attendance
of willing, witnesses; possibility of view of premises, if view would be
appropriate to the action; and all other practical problems that make trial
of a case easy, expeditious and inexpensive.

330 U.S. at 508, 67 S.Ct  839."  *Id.* at 232.

1.    Access to sources of proof and availability of compulsory process and costs

All of plaintiffs' evidence as to the purchase and payment for the goods, the

receipt of the container in the Port of New York, discovery of the loss, the investigation

that ensued, and payment to Maran, Inc. under the cargo insurance policy by Federal

Insurance Company, is located in New York and/or nearby New Jersey.  Plaintiffs'

marine surveyor, Matthew Stelzer, is within approximately 30 miles of the Courthouse

11

and would not have to be compelled to attend deposition or trial in this action in New York since he was hired to provide just such evidence of plaintiff's loss. (Exh. 5)

Defendant Safmarine's investigation of the loss was handled by Mr. William Bender located in Madison, NJ, and within the subpoena power of this Court.

All the terminal records of discharge and delivery of container no. TEXU4748216 are located in the Port of New York at Port Newark-Elizabeth Marine Terminal, also within the subpoena power of this Court.

The documents from South Africa are either already in New York or can be easily transported by electronic means or flown in to one of New York's three international airports.

Certainly, the cost and inconvenience to plaintiffs' witnesses having to travel to South Africa if this case is dismissed far outweighs the cost of authenticating any necessary documentary evidence from South Africa.

2.      View of the premises, if appropriate

This is not a factor in this case, as the proof consists principally of documentary evidence readily available in this jurisdiction.

3.       Other practical problems that make trial of the case easy, expeditious and inexpensive

        No particular problems exist for this Court to try a non-jury maritime cargo loss case under U.S. COGSA and the Harter Act.  Trial in this Court is certainly easier and less expensive for plaintiffs' witnesses, and the documents needed are readily available.

12

**B.     Public Interest Factors:**

The *Gilbert* public interest factors include:  1) the administrative difficulties associated with court congestion;  2) the unfairness of imposing jury duty on a community with no relation to the litigation;  3) the local interest in having localized controversies decided at home; and  4) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law.  *Id.*, 330 U.S. at 508-9.

1.     Administrative difficulties with court congestion

Plaintiff understands that the Southern District Court of New York is a busy commercial and criminal federal court, but it is also the preeminent admiralty court in the country.  As this is a simple maritime cargo non-delivery claim arising under U.S. COGSA and the Harter Act, and the Bill of Lading issued by Power Link, a NVOCC, no particular administrative difficulties for this Honorable Court can be discerned.

2.     Jury duty

None, as this is a non-jury maritime cargo case.

3.     Local interest in localized controversies

Plaintiffs transact substantial business in New York and the subject shipment was destined for and discharged in the Port of New York.  Furthermore, the loss was investigated in nearby New Jersey, the claim handled in New York by Federal Insurance Company, where payment was made to Maran, Inc. under the cargo policy.

4.     Applicable law and conflict problems

The applicable law is U.S. COGSA and the Harter Act, *Id.*.  The Harter Act

requires an ocean carrier to make a proper delivery and governs the period of

responsibility undertaken by the international ocean carrier outside the COGSA "tackle

to tackle" period of custody.  <u>Sompo Japan Ins. v. Union Pacific</u>, 456 F.3d 54 (2d Cir.

2006).

> " Although COGSA superseded the Harter Act with respect to the tackle-
> to-tackle period of international shipments, the Harter Act nevertheless
> continues to govern the carrier's duties in international shipments prior to
> the time when the goods are loaded on the ship and after the time they are
> discharged from the ship, until 'proper delivery.' [citations omitted]."  *Id.*
> at  70 fn. 15.

Thus, this Court should have no difficulty applying the applicable substantive

law to this dispute, and the procedural rules, legal presumptions, burdens of proof, and

rules of contract construction can easily be applied as *lex fori* to this maritime cargo non-

delivery case.

## CONCLUSION

Defendant Power Link's motion to dismiss for *forum non conveniens* must be

denied as plaintiffs' choice of their home forum to litigate this maritime cargo loss case

was made for valid legal reasons and must be accorded great deference; the claim will

become time-barred shortly making South Africa an inadequate alternate forum; the

convenience to the parties and the witnesses is greater in New York than in South

Africa; and the interests of justice dictate that this claim remain in New York and

defendant be estopped from raising clause 21 as a defense to this action, having failed to

raise it timely; and for such other and further relief as the Court deems just and proper.

14

Dated:        May 30, 2008

Respectfully Submitted,

KINGSLEY, KINGSLEY & CALKINS
Attorneys for Plaintiff


BY: ___/S/_____ _____
              Steven P. Calkins
         91 West Cherry Street
         Hicksville,  N.Y. 11801
         (516) 931-0064

## TABLE OF AUTHORITIES

### CASES

Allied Chemical v. Companhia de Navegacao  775 F.2d 476, 482,
1986 AMC 826, 831-2 (2d Cir. 1985) *cert. denied*, 475 U.S. 1099 (1986)...................Page 7

Bank of Credit & Commerce Int'l (Overseas) Ltd. v. Bank of Pakistan, 273 F.3d
241, 246 (2d cir. 2001) .........................................................................................Page 9

DiRenzo v. Philip Services Corp., 232 F.3d 49, 57 (2d Cir. 2000),
 *petition for rehearing granted*, 294 F.3d 21, 27 (2d Cir. 2002).....................................Page 2

Gross v. British Broadcasting Corp., 386 F.3d 224, 230 (2d Cir. 2004)...................Page 1, 2, 5, 11

Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-9 (1947)...............................................Page 2, 11, 13

Iragorri v. United Technologies Corp., 243 F.3d 678 (2d Cir. 2001),
*rehearing en banc*, 274 F.3d 65 (2d Cir. 2001)...............................................................Page 1, 2, 4, 5

Norex Petroleum Ltd. v. Access Industries, 416 F.3d 146 (2d Cir. 2005) .................Page 8, 9, 11

Piper Aircraft v. Reyno, 454 U.S. 235, 241 (1981).........................................................Page 2

Sompo Japan Ins. v. Union Pacific, 456 F.3d 54 (2d Cir. 2006) ...................................Page 14

Uncle Ben's, Inc. v. Hapag-Lloyd Akt., 855 F.2d 215, 217 (5th Cir. 1988) ...................Page 8

Wiwa v. Royal Dutch Petroleum, 226 F.3d 88 (2d Cir. 2000)........................................Page 6

### STATUTES

U.S. Carriage of Goods by Sea Act (COGSA), 46 U.S.C. §30701,
historical and statutory notes, formerly §1300 et seq...................................................Page 1, 3, 4, 6,
                                                                                                                                                    8, 10, 12, 13
The Harter Act,   46 U.S.C. §30701, historical and statutory notes,
formerly §190 ...............................................................................................................Page 3, 4, 8,
                                                                                                                                                    12, 13

Rule 45, F.R.Civ.P. ........................................................................................................Page 3

# TABLE OF CONTENTS

Preliminary Statement...................................................................................Page 1

Argument.......................................................................................................Page 3


POINT I

GREAT DEFERENCE SHOULD BE ACCORDED THE U.S. BASED
PLAINTIFFS' CHOICE OF FORUM IN NEW YORK WHICH WAS
THE PORT OF DESTINATION WHERE THE LOSS WAS
DISCOVERED AND INVESTIGATED................................................Page 3


POINT II

DEFENDANT SPECULATES THAT THE LOSS OCCURRED AT THE
LOADPORT IN SOUTH AFRICA AND THAT SOUTH AFRICAN LAW
APPLIES RENDERING SOUTH AFRICA AN ADEQUATE ALTERNATE
FORUM, BUT U.S. COGSA IS APPLICABLE TO THIS LOSS AND
DEFENDANT IS LIABLE UNDER U.S. LAW.......................................Page 6


POINT III

TIME BAR OF THIS CLAIM AFTER JULY 9, 2008, WOULD RENDER
THE SOUTH AFRICAN FORUM INADEQUATE................................Page 8


POINT IV

DEFENDANT IS ESTOPPED FROM ASSERTING THE POWER LINK
FORUM SELECTION CLAUSE NO. 21 IN ITS BILL OF LADING....................Page 9


POINT V

THE PRIVATE AND PUBLIC INTEREST FACTORS IN THIS CASE
DO NOT OVERCOME THE STRONG DEFERENCE GIVEN TO
PLAINTIFFS' CHOICE OF FORUM IN NEW YORK ..........................Page 11

    A.    Private Interest Factors ......................................................Page 11

    B.    Public Interest Factors .......................................................Page 13

CONCLUSION.............................................................................................Page 14