Our File No.: 9109/SHV
CICHANOWICZ, CALLAN, KEANE,
VENGROW & TEXTOR, LLP
Attorneys for Defendant Power Link Logistics
61 Broadway, Suite 3000
New York, New York 10006
(212) 344-7042

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FEDERAL INSURANCE COMPANY and MARAN, INC.<br><br>    Plaintiff,<br>        -against-<br><br>M/V MSC CHINA her engines, boilers, tackle, etc. POWER LINK LOGISTICS INC. SAFMARINE CONTAINER LINES N.V.<br><br>    Defendants. | 08cv1806 (SHS)(HP)<br><br>**REPLY MEMORANDUM OF LAW IN SUPPORT OF POWER LINK LOGISTICS' MOTION FOR SUMMARY JUDGMENT DISMISSING THE COMPLAINT ON THE BASIS OF *FORUM NON CONVENIENS*** |

Defendant Power Link Logistic (Power Link), by and through its attorneys, Cichanowicz, Callan, Keane, Vengrow and Textor, submit this reply memorandum in support of its motion to dismiss this action on the basis of *forum non conveniens*. Power Link relies upon Points I-III set forth in its initial memorandum, the Martin, Hoang and Vengrow declarations, the exhibits attached thereto and Point IV set forth below.

**PRELIMINARY STATEMENT**

In its opposition, plaintiff recognizes that a *forum non conveniens* analysis is fact specific and that the Court enjoys great discretion in deciding such a motion. (*Plaintiff's Memo of Law*, pg. 2) Plaintiff has not raised any persuasive arguments or identified any compelling facts to justify litigating this matter in the Southern District of New York.

Rather, there are sufficient undisputed facts presented to justify this Court exercising its discretion dismissing plaintiffs' complaint in favor of the South African forum.

## POINT IV

### A. PLAINTIFF'S CHOICE OF FORUM

In Point I of its opposing memorandum plaintiffs argue that the complained of loss was discovered, investigated and paid in New York creating a bone fide connection sufficient to allow deference to plaintiffs' choice of forum. However, even if accepted as accurate, the factors that plaintiffs rely upon are insignificant to determine the cause of the alleged loss.

In this regard, plaintiffs' survey report reveals that the investigation was actually conducted in South Africa where it was discovered "that the loss occurred while the container was in the care, custody and control of SAPO at the Durban, South Africa port" prior to loading aboard the ship. (*Calkins Decl.*, Ex. 5, pg. 2)  Further, plaintiffs fail to mention that its own investigator sought evidence from "various parties overseas to include Marcia Lehmkuhl from freight forwarders Z.A. Trans Logistics' in order to determine the cause of the alleged loss. *Id.*

In addition, according to plaintiffs' surveyor, "a meeting was held at the Durban port with various officials from the South African Port Authority. After the meeting, the South African Police were advised that it had appeared that the theft occurred at the port. During the course of our [surveyor's] inquiries, we also initiated liaison with Maersk Line (Safmarine) and concluded that the container was pilfered after arrival at the Durban port and prior to being loaded onto the vessel. As indicated, the South African Police are currently conducting an investigation into this matter…" (*Calkins Decl.*, Ex. 5, pg. 5)

2

Thus, even though plaintiffs' investigator was from the United States, the parties who participated in the investigatory meeting are in Durban and are essential witnesses, however, they are not within the jurisdiction of this Honorable Court. Plaintiffs cannot deny that it would be inconvenient to conduct this litigation in the United States when it is likely that the alleged loss occurred in South Africa and all those required in the investigation to determine the cause of the complained of loss are present there.

In addition, plaintiff's survey report points out that the subject container was shipped "FOB."[1] As such, it appears that the risk at the time of the loss, as determined by plaintiffs' surveyor, was on the South African seller. This fact raises a question as to why plaintiff Federal Insurance Company paid a New York consignee for a South African seller's loss.

It is worth noting that plaintiffs survey report confirms that plaintiff Maran has been doing business regularly in South Africa for over fifteen (15) years; exporting up to eight (8) containers per week from the subject port of Durban. (*Calkins Declaration*, Ex. 5, pg. 2) As such, plaintiff Maran should have reasonably anticipated that this dispute could be litigated in South Africa. ("By seeking out business in that country, Gross could reasonably expect that disputes arising from those contacts might be litigated in Courts of Great Britain." *Gross v. British Broadcasting Corp.*, 386 F.3d 224, 230 (2d Cir. 2004))

Finally, plaintiffs attempt to bolster their *deference to plaintiffs' choice* argument by suggesting that Power Link is attempting to time bar the case or is forum shopping.

---

[1] The ICC Official Rules for the Interpretation of Trade Terms (Incoterms) defines "Free on Board" as meaning that the seller delivers when the goods pass the ship's rail at the named port of shipment. Further, Incoterms, A5, *Transfer of Risk* states that the seller bears the risk of loss to the goods until they have passed the ship's rail at the named port of shipment.

3

Both of these arguments fail as fully described in Points IVC and IVD respectively below.

Plaintiffs' investigation concluded that the alleged loss occurred in South Africa, plaintiffs had knowledge of Power Link's Californian jurisdiction clause, plaintiffs knew or should have known that the risk of loss was on the seller and plaintiffs could have anticipated that it would be required to resolve such a dispute in South Africa. Yet, plaintiffs chose to bring this action in a jurisdiction that has no connection between the facts giving rise to the alleged loss and the chosen forum. Plaintiffs' argument in favor of its home forum alone is not enough to maintain this action in the S.D.N.Y. Under these circumstances, it would be *oppressive* and *vexatious* to force Power Link to defend this lawsuit in this jurisdiction.

**B.   APPLICABLE LAW**

In Point II of its opposing memorandum, plaintiff spends three pages refuting an argument we did not make. Defendant, Power Link, does not dispute that its bill of lading makes the U.S. Carriage of Goods by Sea Act ("COGSA") the governing law of the bill, or that it is the Power Link bill of lading and COGSA that determine the rights and obligations of the plaintiff (as the shipper's subrogor) and defendant, Power Link (as carrier).

However, COGSA does not address every possible issue that might arise in a case such as this. For one thing, it governs *only* the rights and obligations between a shipper and carrier. *Serrano v. U.S. Lines Co.*, 238 F.Supp. 383, 388 (S.D.N.Y. 1965). It does not address the rights and obligations between Power Link and a carrier subcontractor. See, *Prudential Lines, Inc. v. General Tire Intern. Co.*, 440 F.Supp. 556, 558 - 59

4

(S.D.N.Y. 1977); *Trade Arbed, Inc. v. S/S Ellispontos,* 482 F.Supp. 991, 995 (S.D.Tex. 1980). If the loss or damage complained of happened at the South African Port Authority due to the acts or omissions of Port Authority personnel, then presumably it would be South African law that would apply to any claims by Power Link over against the South African Port Authority brought in South Africa - especially since U.S. COGSA has no provisions which deal with such claims. *See, 46 U.S.C. 30701, Notes*; see also, *Assoc. Tech. Int'l De Cie. D'Assur. Maritime Et Transp. v. Cast Europe (1983) Ltd.,* 662 F.Supp. 1443, 1446 (N.D.Ill. 1987) (Hague Rules do not cover all possible questions arising under Bill of Lading which chose Canadian law to fill in the gaps).[2] Moreover, the inability to implead a foreign potential indemnitor, such as the South African Port Authority, is a factor that weighs in favor of a *forum non conveniens* dismissal. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 267 (1981).

### C. TIME BAR

In Point III of its opposing memorandum, plaintiffs argue that South Africa is an inadequate forum since this action will be time barred on July 9, 2008. Further, plaintiffs speculate that this motion will not be decided in time for them to file this action in the proper forum. Under the circumstances, it is common practice for parties to stipulate that a time bar defense will not be raised, provided that this matter is refiled in the proper jurisdiction within an agreed upon period of time after dismissal of this action. Power Link is willing to enter into such a stipulation.

In addition, plaintiffs are on notice and still have time to file a protective action in South Africa to avoid a potential time bar defense by South African parties that have

---

[2] "COGSA and the Hague Rules are virtually identical in their language." *Complaint of Damodar Bulk Carriers, Ltd.,* 903 F.2d 675, 681 (9th Cir. 1990).

been identified but are not named in this lawsuit, whom may ultimately be liable for the complained of loss.

Plaintiffs' argument that South Africa is an inadequate alternative forum because Power Link might assert a time bar defense in a future to be filed action in South Africa is premature, highly speculative and ultimately fails.

**D.   POWER LINK'S FORUM SELECTION CLAUSE**

In Point IV of its opposing memorandum, plaintiffs argue that Power Link should be estopped from asserting its Californian forum selection clause in its bill of lading since neither Power Link nor plaintiff have moved to enforce it. In fact, it would be as inconvenient to litigate this matter in California as it would to litigate it in New York. Thus Power Link with a genuine concern for convenience and in a good faith effort, Power Link moved to dismiss the action on the basis of *forum non conveniens* rather than its forum selection clause.

**E.   PRIVATE AND PUBLIC INTEREST FACTORS**

**i.   PRIVATE INTEREST FACTORS**

Again, plaintiffs argue that the complained of loss was discovered, investigated and paid in New York and as such sources of proof regarding same are in New York. The question is not if there are contacts in chosen forum rather whether the contacts in the chosen forum relate to the ease of litigating the case. (Although the "contacts" a case may have with the jurisdiction in question is an issue, a proper Gilbert analysis obligates the court to assess not only the number of contacts but also the comparative efficacy and efficiency of trying a case in one forum as opposed to another. Contacts are relevant to the *forum non conveniens* inquiry only insofar as they relate to the ease and fairness of

trying a case in a particular jurisdiction." *Calavo Growers of Cal. v. Generali Belgium*, 632 F.2d 963, 969 (2d Cir. 1980) )

As explained in IVB above and supported by plaintiffs' own survey report, the facts plaintiff relies upon are irrelevant in determining the cause of the alleged loss. As described above, balancing of convenient sources of necessary proof and availability of compulsory process of knowledgeable witnesses weighs in favor of a South African forum. Furthermore, if necessary, in South Africa, the port where the subject loss purportedly took place could be viewed. In sum, discovery, process and expense make South Africa the most convenient forum.

### ii.   PUBLIC INTEREST FACTORS

Plaintiff relies upon *Sompo Japan Ins. v. Union Pacific*, 456 F.3d 54 (2d Cir. 2006) to set forth its argument related to applicable law and conflict problems. However, as explained in IVB above, South African law would apply as between Power Link and the South African Port Authority who had custody and control of the subject container when a seal change was noted. (*Calkins Decl.*, Ex. 5, pg. 2) As a result, it would be more convenient for a South African Court to apply COGSA to the claims as between plaintiffs and defendants and South African law to the claims as between defendants and the potentially liable third parties in order to resolve this matter.

Also note that Plaintiff does not dispute that Durban will have a great interest in criminality at its ports and within its jurisdiction decided under the laws of and by the Courts of South Africa. As a result the local interest in having localized controversies decided at home weighs in favor of dismissing this action to the South African forum.

7

## CONCLUSION

Power Link Logistics' Motion to Dismiss this matter on the basis of *forum non conveniens* should be granted.

Dated: New York, New York
       June 12, 2008

                                                CICHANOWICZ, CALLAN, KEANE,
                                                VENGROW & TEXTOR, LLP
                                                61 Broadway, Suite 3000
                                                New York, New York 10006
                                                *Attorneys for Defendants*
                                                *Power Link Logistic*

By:    S/ Stephen Vengrow
         Steven H. Vengrow (3479)

## **CERTIFICATE OF SERVICE BY ECF**

The undersigned declares under penalty of perjury that the following is true and correct.

1. I am over the age of eighteen years and I am not a party to this action.

2. On June 12, 2008, I served the following by ECF a true and complete copy of Power Link's reply to plaintiffs' opposition to the motion to dismiss on the basis of *forum non conveniens* to the following party at:

> Kingsely, Kingsley & Caulkins
> Attention: Steve Caulkins
> 91 West Cherry Street
> Hicksville, NY 11801
> Voice: 516-931-0064
>
> Freehill Hogan and Mahar LLP
> Attention: Gina Venezia
> 80 Pine Street
> New York, N.Y. 10005-1759
> Voice: 212-425-1900

DATED:  New York, New York
June 12, 2008

_____s/ Jessica De Vivo_____
Jessica A. De Vivo (JAD6588)